## NEW ORLEANS, JACKSON AND GREAT NORTHERN RAILROAD COMPANY *v.* AARON FIELD.

46  573
78  127
78  949

1. RAILROAD — RIGHTS OF OWNERS OF CATTLE. — Owners of cattle may permit them to run at large and depasture on uninclosed lands, whether of railroad companies or other owners, and do not thereby incur any responsibility as trespassers. The owner of cattle cannot be held as a trespasser for his cattle entering a close unless they have broken a fence deemed in law sufficient to exclude them.

Statement of the case.

2. Same — railroad companies not bound to fence. — Railroad companies, like other proprietors, are not bound to inclose their lands to keep off cattle. They are to be considered as proprietors of property, using it for their private gain, but not to be permitted so to use it as to harm or injure others unnecessarily, or if to be avoided.

3. Same — duty to employ skillful and prudent agents, and to use care and diligence. — It is incumbent on them to employ skillful and prudent agents to guide and control the powerful forces they employ with vigilance, prudence and care, so as not to endanger the lives and property of others. They must use their locomotives with such care and diligence upon the road as would be exercised by a skillful, prudent and discreet person, regarding his duty to the company and having a proper desire to avoid injury to property along the road and liable to be exposed to danger.

4. Same — persons residing near railroads take what risk. — Persons living contiguous to railroads have the same right as others in more remote localities to turn their cattle upon the range. But they assume the risk of their greater exposure to danger.

5. Same — what will justify killing cattle. — The only justification to a railroad company for injury to cattle upon its track is that, in the prosecution of its ordinary and lawful business, the act could not be avoided by the use of such care, prudence and skill as a discreet man would put forth to prevent or avoid it.

6. New trial — not granted for refusal of instruction which is correct, when. — This court will not disturb the verdict of a jury, if it can be supported by any fair view of the testimony which they may have taken and had a right to take, although a particular instruction, which embodies a correct abstract principle, may be refused, if looking at all the instructions given the jury were furnished with full and sufficient guides as to the law to enable them to apply it to all the facts in evidence.

7. Same — case in judgment. — *Held*, that in this case the jury were fully instructed in every view which they could reasonably take of the evidence, and that the refusal to grant the fourth instruction asked by defendant was not ground for reversal.

8. Railroad — rate of speed which may be adopted. — The rate of speed which may be adopted on a railroad depends on the condition of the road, the usage of railroads generally, and the amount of property and passengers offering for transportation. The principle is that the rate of speed must be such as is consistent with the safety of the property and passengers in their care. Whatever rate may be adopted there must be no relaxation of efforts to protect cattle from injury. If the convenience and business of the public demand a rapid transportation, railroads are not restrained from meeting the requirements, because the danger to stock is greater from a fast train than a slow one.

Error to circuit court of Hinds county, first district. Brown, J.

This was an action to recover, of the plaintiff in error, damages for killing a mule. It was tried and resulted in a verdict in favor of the owner of the mule. There was con-

siderable testimony in the case, but, as it was made to turn in this court upon legal rules and principles rather than upon the facts, they are not stated. The errors complained of are the action of the court below upon the instructions, and the refusal of the court to set aside the verdict of the jury, upon the ground that it was against the evidence.

The following instructions were granted for plaintiff, viz. :

1st. The defendants are liable for damages done in running their cars by their servants and agents, if the injury is the consequence of the negligence, carelessness or mismanagement of their agents in their business as agents of the company.

2d. The defendants and their agents were bound to use that diligence and care, to prevent damage to the property of plaintiff, which a reasonably prudent person would, under like circumstances, use for the protection of their own property, and if the jury believed that the killing of the mule of Aaron Field was the consequence of the carelessness or mismanagement of the agents of defendants, they should find for the plaintiff.

3d. It is the duty of a railroad company to furnish upon each train such brakes and brakeman as may be able to control its speed so as not, unnecessarily, to endanger life or property.

The following instructions were asked for defendant below:

1st. The burden of proof is upon the plaintiff to prove negligence or mismanagement, and it is incumbent upon the plaintiff, as a condition of his recovery, to show that his mule was killed through the mismanagement or neglect of the company's, or defendant's, servants, and that negligence or mismanagement cannot be presumed, but must be proven.

2d. If the jury believe, from the evidence, that reasonable and ordinary care was used by the servants of the defendants in the management of the train, at the time the mule was charged to have been killed, they must find for the defendants.

3d. The law draws a distinction between the responsibility

of a "common carrier"—a railroad company—toward persons and property to be transported over its road, and the other persons and property not so intrusted to the company, as a "common carrier," with respect to persons and property in their charge as such, the company is committed to the utmost care. But, toward other persons and their property, with respect to whom the railroad company have not assumed the responsibility of "common carriers," they are only bound, in running their trains, to the use of such reasonable care and prudence as a prudent man would use in similar circumstances to prevent injury or destruction. And if the jury believe, from the evidence, such care and prudence was used by the servants of the defendants in running the train, at the time the mule was injured, they must find for the defendants.

4th. The railroad company, the defendants, had the right to run their train at a reasonable speed, day and night, and that the schedule time of running ought not, in any degree, to be controlled by the liability of stock to wander into the road, or that the company, in determining the rate of speed, should have any special reference to this liability. The speed of the train should be controlled by the custom of railroads and the exigencies of trade and freight, and if the jury believe, from the evidence, that the defendant's train, at the time it crossed the crossing of the Livingston and Jackson road, was running at the usual speed the trains were accustomed to run over that crossing, and that the mule of plaintiff was one hundred and fifty yards from the crossing at the time the train so crossed, and got on the track of the road after the train crossed, and that it was impossible to stop the train in time to prevent the accident, then they must find for the defendant.

5th. A party seeking damages, under the 43d article of the Code, must show some mismanagement or neglect on the part of some of the servants of the company, and that the injury resulted therefrom, and unless the testimony in the

case establishes such mismanagement or neglect, they must find for the defendant.

6th. If the jury believe, from the evidence, that the mule was not on the track of the railroad as stated by the witness, Apperson, it was not incumbent upon the engineer to blow his whistle or slacken his speed of running until the mule got on the track, they will find for the defendant.

7th. If the jury believe, from the evidence, that the engineer, Apperson, caused the alarm whistle to be blown when he first saw the mule upon the track and blowed on brakes, and they were put on, and it was impossible to prevent the mule being struck, they must find for the defendant.

8th. In a case where stock is injured by being run over by a railroad train, and where there is no fraud, malice, gross negligence or oppression, if the jury believe the owner of the stock entitled to recover at all, then the measure of damages is the value of the stock destroyed, with legal interest.

9th. The loss of profit, or the amount of money expended in replacing a mule, destroyed by a railroad train, is not a part of the measure of damages, but the measure of damages is the value of the mule destroyed with legal interest only.

10th. It is the duty of the railroad engineer, when stock is discovered upon the track, to slacken speed and to endeavor, by whistling, to frighten it from the track. If, however, by reason of a down grade and a heavy loaded train, the engineer is not able to slacken speed so as to avoid striking the stock, then the road is in no default, provided that the engineer had whistled and used every exertion to slacken speed. All of which were granted except the fourth and sixth, which were refused.

*Yergers & Nugent* and *W. P. Harris*, for plaintiff in error,

Reviewed the evidence, contending that the verdict was clearly wrong, and that the circuit court erred in refusing

the fourth instruction asked by defendant below, and cited Raiford v. M. C. R. R. Co., 43 Miss. 233.

*Shelton & Shelton,* for defendant in error,

Contended that the fourth instruction asked by defendant below was properly refused, and that the verdict was right and should not be disturbed.

SIMRALL, J. :

This writ of error is prosecuted by the New Orleans, Jackson and Great Northern Railroad Company, to review the judgment of the circuit court for refusing a new trial, and for alleged error in granting instructions to the jury. The questions grow out of the liability of the railroad company for the killing of the plaintiff's mule by one of its freight trains under the circumstances proved on the trial. The subject is discussed and the principle in general terms is stated in Vicksburg & Jackson R. R. Co. v. Patton, 31 Miss. 176; Mississippi Central R. R. Co. v. Raiford, 43 ib. 238; 42 ib. 606, 607, and other cases.

It is now well established by authority and reason in this state, that uninclosed lands, although private property, are a *quasi* common, or, as expressed in local parlance, a "range," in which the owners of cattle, and domestic animals generally, may permit them to go out at large and depasture without thereby incurring any responsibility as trespassers. The common-law principle, which required the owner to confine his stock on his own premises and made him a wrong-doer if they escaped into the lands of his neighbor, never obtained in this state. But the converse is the rule ; that each occupant of lands must secure his fields by strong and sufficient inclosures against the intrusion of animals ; and that the owner cannot be held as a trespasser for their entering a close unless they have broken a fence deemed in law sufficient to exclude them. Uninclosed lands in this state are held subject to this right or easement. Railroad companies, like other proprietors, are not bound

to inclose their roads to keep off cattle. They are common carriers, with special franchises granted by the state, to enable them to construct and operate their roads; while their franchises, equipments and roads are private property they are public conveniences, instrumentalities encouraged and promoted by the state to carry forward the general progress in the development of population and industries, and their fruits, wealth, public and private. They have become a necessity of modern civilization, and enter largely into the policies of all the states. By their means commerce and travel is mainly conducted.

In this twofold aspect, therefore, ought they to be considered. First, as proprietors of property, using it for their private gain, but, at the same time, not to be permitted so to use as to harm or injure others unnecessarily, as if to be avoided. In the prosecution of their ordinary business, they put in operation forces powerful and difficult to manage; therefore it is incumbent on them to employ skillful and prudent agents, to guide and control them with vigilance, prudence and care, so as not to endanger the lives and property of others. They must use their locomotives with such care and diligence upon the road as would be exercised by a skillful, prudent and discreet person regarding their duty to the company, having a proper desire to avoid injury to property along the road, and liability to be exposed to danger. Baltimore & Susquehanna R. R. Co. v. Woodruff, 4 Md. 257. Persons living contiguous to railroads have the same right as others, in more remote localities, to turn their cattle upon the ranges; but they assume the risk of their greater exposure to danger. The cattle are liable to go upon the road; the company cannot detain them, *damage feasant*, any more than any other landowner; nor can they treat them as unlawfully there, and therefore relax their care and efforts to avoid their destruction. The only justification of the company for injury to them is that, in the prosecution of their ordinary and lawful business, the act could not be avoided by the use of such care,

prudence and skill as a discreet man would put forth to prevent or avoid it. The owner of cattle at large on the range takes the risk of injury or total loss by the locomotive and train, if the cattle exposed upon the track could not be saved by prudence, skill and caution. The company is excused and justified where, after using the means suggested by skill, prudence and caution, the injury or destruction could not be avoided.

In this and all similar cases, the question is reduced to this : Was the accident inevitable ? Did the company's agents and servants exert the skill, the prudence and care incumbent upon them, to avoid the injury and protect the property ? When the injury became probable and imminent, was any thing left undone which might reasonably be supposed would have been available, if it had been done ? Were the agents of the company guilty of negligence ? These are questions of fact to be responded to by the jury, from the evidence ; responded to under the guidance and direction of the court on the questions of law with which they are compounded.

It is complained by the plaintiff in error that the circuit court erred to his prejudice, by declining to give the fourth prayer for instruction. It has become the settled practice in this court, and, as it seems to us, accords with reason, and is needful to the practical administration of justice, not to disturb the verdict of the jury, if it can be supported by any fair view of the testimony which they may have taken, and had a right to take. Although a particular instruction may be refused, which embodies a correct abstract principle, if, looking at all the instructions given, the jury were furnished with full and sufficient guides as to the law to enable them to apply it to all the facts in evidence ; if the other charges laid down the law so copiously and fully as that they fairly embraced every view which the jury could reasonably take of the testimony, and their verdict is not against the weight and preponderance of the testimony, so as to do injustice, we would not set aside their verdict.

The jury were so instructed in several different forms of speech as to the relative rights and obligations of the parties toward each other, and on the subject of negligence, as to sufficiently guide them, without this fourth instruction.

As to the rate of speed at which trains may be propelled, it is dependent on several considerations: the condition of the road, the usage of railroads generally, the amount of property and passengers offering for transportation; but the principle which underlies the subject is, that the rate of the speed must be reasonable, such as is consistent with the safety of the property and passengers in their care.

Whatever rate be adopted, the company are in no degree to relax efforts to protect cattle from injury. If the convenience and business of the public demands a rapid transportation, they are not restrained from meeting the requirement, because the danger to stock, from a fast train, is greater than a slow one. If the object of the fourth instruction was to enumerate the facts in evidence, and to take the opinion of the court, whether if proved and believed by the jury, they acquitted the company of negligence, all the circumstances bearing upon the point ought to have been included, for the question was to be settled by a consideration of all the circumstances, and not a part of them, and the court might have withheld the instruction, as calculated to mislead, because it did not include all that the evidence disclosed, proper to be considered by them.

*The judgment is affirmed.*

TARBELL, J., dissented.