Sneed, J.,
delivered the opinion of the court.
„ The action is to recover damages for stock killed by defendant in running its train.
The verdict and judgment were for the plaintiff, for the value of the stock. Upon the trial the deposition, -of defendant’s engineer was read to the jury. lie testifies that the accident occurred at night, when the train was running-twenty-three to twenty-five miles per hour; that he'discovered the cattle on the tr-ack about thirty-five or forty-five yards before the train. That on such a night, it being a light night, and at such a speed, the headlight would not discover an object further than that distance, but going at the rate of twenty miles an hour the headlight would discover an object some sixty yards; that at the rate the train was running he could not have checked -it so as to avoid the accident in a distance of sixty yards. He states *526 that the wind was blowing so hard that the water gathering in his eyes was another cause for his not seeing* further. He was on the lookout ahead, and when he saw the cattle he shut off steam, whistled for brakes, reversed the engine, and whistled the cattle alarm. He states further that he felt the brakes applied when the whistles blew, and that -he did all in his power to prevent the accident. After th deposition was read the plaintiff moved to exclude certain portions of it from the jury, which was done. The questions and answers thus excluded are these: 1st. Did you feel the brakes applied when you called for them? Aus. I did. Could an object at that point be discovered at a further ■distance than thirty-five or forty-five yards, if not, why ? Ans. It could not be, for tlie reason a man looking out at the window at that speed, the wind would make his eyes water so that he could not see au object at a further distance. Besides, the headlight did not show at a greater distance than on a light night going at that speed. Did you do ail in your power to prevent the accident? Ans. I did. Were you on the lookout ahead at the time? Ans. I was. The statement of the engineer that he did all in his power to prevent the accident, was properly excluded. The inquiry for the jury was, whether the accident was occasioned by the negligence of the defendant, and the verdict of the jury must be shaped by the facts, by what the engineer did do, rather than what, in Ms opinion, was the effect of what he did. The jury are the judges whether vh-at lie did do was all that he could do in the premises, and not the witness. As to the other portion of the testimony excluded, we think the exclusion thereof was erroneous. The company was then cut off from the most material of defenses in establishing the absence of negligence of its agents, the first and most important of which, was that of keeping a lookout ahead for obstructions upon the track.
This, is the first requisite of the statute. The, next is, *527 that when any person, animal or other 'obstruction appears upon the road the alarm, whistle shall be sounded, the brakes put down, and every possible means employed to- stop the train and prevent the accident. If these things are done, the company is by the. law 'absolutely absolved from all liabilities. Code, secs. 1166 and 1168 [Shannon’s Code1, secs. 1574, 1576]. The burden of proof that these precautions were observed is upon tbe company, and the question for the jury was whether or not they were observed. Under the ruling of the court, the defendant was precluded from proving what the statute requires it to prove as its1 complete protection. The reason for his Honor’s ruling is not disclosed. We are. left to infer .that in the opinion of the court, the defendant was guilty of such a degree of negligence in running at such a speed that the train could not be checked in time to prevent the accident; or that the want of a headlight that would discover the obstruction further than it was discovered, was of itself such negligence as to render the- statutory defenses no protection. We are aware of no law in this state which undertakes to regulate the speed at which a railway train shall he run upon its own highway. The question of speed is left to the discretion of the company, to he regulated according to the exigencies of commerce or travel, under liabilities imposed by la,w for a reckless abuse of that discretion. And in any case, the question, whether under all the circumstances the company is guilty of negligence in running its trains a,t a certain rate of speed, is a question of fact for the jury. Morse v. Road B. R. R. Company, 27 Ver., 49. And -in several cases it has been held in determining the rate of speed at which a railway company may run its train, it is not bound to consider the increased risk to cattle running at -large in the vicinity of its track. 13 Ohio R. R., 66; 46 Miss., 573. No doubt cases do often arise where a reekless speed would *528 amount to gross negligence, 'but tbe jury must judge thereof with all tbe facts before them.
While we are aware of no law prescribing the character of headlight the railway company shall use, or the poiwer thereof for discovering obstructions on the track, we presume that the general principle which would govern that question would be that which is applicable to every other appointment of the locomotive. That it is the duty of the company to use the best the state of the art 'affords. In the case before us it does not appear that the headlight was an inferior one, nor is there any proof to show that the cattle were not seen by the engineer at the very instant of time they came upon, the track, some thrty-five or forty-five yards before the train, when they were instantly discovered by the headlight, when he at once resorted to the precautions prescribed by law. Reverse the judgment and award a newi trial.