## MARTIN ET AL. v. PLATTE VALLEY SHEEP COMPANY.

INJUNCTION—ANIMALS—TRESPASS—PUBLIC LANDS—ENCLOSURES—JUDGMENT—PLEADING.

1. A decree held to be justified enjoining defendants from wilfully driving their cattle upon or across plaintiff's lands, and from deliberately holding them thereon for feeding or watering, where defendants, who allowed their cattle to run at large on public land within the same enclosure as plaintiff's land, frequently, against plaintiff's protest, drove them over and across its land, and on at least two occasions wilfully drove and grazed them upon the same.

2. Under an implied license from the government, stockgrowers are free to depasture and graze their live stock upon the public lands that are left open and unenclosed by the government, in the absence of express restrictions or prohibitions as to such use.

3. A superior right to the use of unappropriated public land is not acquired by merely enclosing it with a fence.

4. Although another party may have built a fence enclosing unappropriated public land, one who peaceably enters thereon through gates in the fence, and permits his cattle to graze and run at large thereon, does not thereby commit an unlawful act.

5. A decree enjoining defendants from permitting their cattle to wander upon plaintiff's lands situated in the same general enclosure with a large body of public land, which enclosure is maintained by plaintiff, is too broad as in effect restraining defendants from allowing their cattle to run at large upon the public land; the land of plaintiff not being separated therefrom by any barrier.

6. The common law rule requiring the owner of cattle to confine them, or, in default thereof, to answer for any damages occasioned by their trespasses upon the lands of another, does not obtain in this State.

7. Although cattle are permitted to run at large, and no actionable trespass is committed when domestic animals lawfully running at large wander upon and depasture the unenclosed lands of a private owner, the owner of such animals is not permitted to wilfully and knowingly drive them upon the premises of another, though unenclosed.

8. The known probability, because of their natural disposition to wander in search of food and water, that cattle allowed to run at large will roam upon and depasture unenclosed lands, is not sufficient to constitute the owner a wilful trespasser, if his cattle lawfully at large do wander upon and depasture such lands.

9. Plaintiff constructed and maintained a large enclosure embracing approximately an equal quantity of land of its own and unappropriated public land, the latter being situated on either side of plaintiff's land, and, on one side, consisting of quite a body of contiguous sections. The only running or living water within the enclosure was located on land of plaintiff. Through gates left in the fence defendants peaceably entered with their cattle, turning them at large upon the public land. *Held,* that the act of defendants in turning their cattle loose on the public land would not amount to driving them upon plaintiff's land, although they might wander upon such land, . and defendants knew that they would naturally do so, if allowed to graze unrestrained upon the public land.

10. The fact that defendants' cattle would naturally wander from the public land upon land of plaintiff located in the same general enclosure constructed and maintained by plaintiff, but not otherwise enclosed, is not a sufficient ground for enjoining defendants from allowing their cattle to run at large upon the public land in such enclosure.

11. The fact that plaintiff had constructed an unlawful fence, thereby enclosing public land, would not justify defendants in the commission of a wilful trespass upon plaintiff's lands within the enclosure.

12. The right to relief being . based upon the alleged fact that defendants had driven, held and herded their cattle upon the lands of plaintiff, and threatened to continue such acts, it was no defense against such allegations that plaintiff maintained an unlawful enclosure, thereby unlawfully enclosing with its own lands a large body of public land, and hence a demurrer to the answer setting up such defense was properly sustained.

13. But defendants were not prejudiced by the sustaining of the demurrer, since the facts alleged were competent under the denials contained in the answer, and were brought out in the evidence.

14. In view of the modification only of the judgment, the injunction being permitted to stand in part, no costs were taxed

for briefs, but plaintiffs in error were allowed all their other costs on appeal.

[Decided April 25, 1904.]                    (76 Pac., 571.)
[Rehearing denied December 31, 1904.]    (78 Pac., 1093.)

ERROR to the District Court, Laramie County, HON. RICHARD H. SCOTT, Judge.

The facts are stated in the opinion.

*W. R. Stoll,* for plaintiffs in error.

Owners of live stock, under the license of the government of the United States, have a right to let their live stock graze at will upon the public domain adapted to such use, not enclosed or otherwise withdrawn from such use by the government; and the enjoyment of such right will be protected by any proper remedy of the courts.

A distinction between stock roaming at will and being driven and held upon the land of another is well established. The owner of live stock upon the public domain may turn his stock loose and permit them to roam at will; and if such stock, in roaming at will, feed upon, go upon or cross the unfenced lands of some private person, such person can have neither an action for damages in trespass nor an action by injunction to restrain such trespasses, so long as such live stock are not deliberately driven, herded or held upon such land. And the same principle applies whenever, in the proper handling of his live stock, the owner merely drives his stock upon or crosses the land of another, and when he does not do so exclusively for the purpose of depasturing the lands of such other person. (Buford v. Houtz, 133 U. S., 320; 7 Ency. Law, 892, Par. (d); Delaney v. Errickson, 11 Neb., 533; Powers v. Kindt, 13 Kan., 74; Caulkins v. Matthews, 5 Kan., 199; R. Co. v. Rollins, 5 Kan., 167; Harrison v. Adamson, 76 Ia., 337; Lazarus v. Phelps, 152 U. S., 81; Hecht v. Harrison, 5 Wyo., 279; State v. Johnson, 7 Wyo., 512; Cosgriff v. Miller, 10 Wyo., 190.)

It is unlawful for any person to enclose government land to which he has no title or color of title, and it is equally unlawful for any person to seek to appropriate to his own exclusive use any such government land, or to obstruct or prevent full passage or transit over the same by means of fences or otherwise.   (23 U. S. Stat. at Large, 321; Buford v. Houtz, 133 U. S., 320; U. S. v. Brighton Ranche Co., 26 Fed., 218; U. S. v. Buford (Utah, July 6, 1892), 30 Pac., 433; U. S. v. Cleveland & Col. C. Co., 33 Fed., 323; U. S. v. Camfield, 59 Fed., 562; Camfield v. U. S., 66 Fed., 101.)   It is believed that this court would no longer sustain the doctrine announced by the Supreme Court of this State, in the case of U. S. v. Douglas-Willan Sartoris Co., 3 Wyo., 287; and certainly, as to public lands within this State, the decisions of the Federal Courts would govern.   (Cameron v. U. S., 148 U. S., 301; U. S. v. Bisel, 8 Mont., 20; U. S. v. Flaherty, 8 Mont., 31; Barclay v. U. S., 3 Wash., 522; U. S. v. Cook, 36 Fed., 896; U. S. v. Felderward, 36 Fed., 490; State v. Goodnight, 70 Tex., 682.)

An injunction will never be permitted where it is sought not in good faith, but for some ulterior purpose.   It is equally incompetent for any person to seek a remedy by injunction, for the purpose of enabling him thereby to violate a fundamental principle of the law or the positive enactments of a statute.   It has long been a familiar principle, running through all branches of the law, that the law will not permit the accomplishing by indirect means of that which it forbids the doing of directly.   It is a fundamental maxim of equity that he who comes into equity must come in with clean hands; hence, it is always permissible, when a plaintiff seeks any remedy in equity, to show that the action which he brings is not brought in good faith.   The maxim must be applied to the transaction, and must not go so far as to involve independent matters, but it does involve all matters which are properly included in the transaction in question.   (1 Pom. Eq., Secs. 397, 398,

399, 400-404; Bisp. Princ. Eq., Sec. 42; Comstock v. Johnson, 46 N. Y., 615; Mich. Pipe Co. v. Fremont, &c., 111 Fed., 284.) It cannot, in principle, make any difference whether an attempt to appropriate the public domain to one's self and to exclude others from it, is manifested by the erection of a fence, by the driving of another's cattle off the domain, by herding them off, or in any other manner. The point is that no individual has a right to exclude others from the public domain, and thereby appropriate the same to his own use. If the plaintiff, instead of erecting a fence, had driven defendant's cattle off the government land involved, there is no question but that the defendants could obtain an injunction to prevent the same being done, or could maintain their actions against the plaintiff, according to the nature of the injury.

If any individual unlawfully attempts to interfere with the cattle of another roaming at will upon the public domain, such other person has his appropriate remedy in the courts. If, then, it is true that the plaintiff could not appropriate to itself the public domain in question, by driving defendants' cattle off the same, clearly, it could not appropriate to itself the public domain by erecting a fence so as to exclude such cattle therefrom.

It must necessarily follow in this case that, if this suit was instituted to accomplish such results, then there was a want of good faith on the part of the defendant, and the defendant has violated the familiar maxims herein referred to.

It was clearly a defense to the action for plaintiffs in error to show either one or both of two things, viz: that by means of a fence, or otherwise, the defendant in error was seeking to prevent plaintiffs in error from pasturing their cattle upon any portion of the public domain; that the defendant in error was seeking to appropriate to itself portions of the public domain to the exclusion of plaintiffs in error, and that such was the object of defendant in error with relation to the designated portions of the public do-

main. By sustaining the demurrer to this second defense, this matter was taken out of the issues of the case, and in this respect we submit the trial court erred.

Notwithstanding the fact that this defense was so excluded by the ruling of the trial court, it was impossible for the plaintiff below to attempt to establish its allegations without bringing in the matter of the fence; and the trial of the case, although limited to the matters not involved in the second defense, developed the fact that the purpose of the defendant in error was to appropriate the government lands to its own use and to exclude the plaintiffs in error therefrom, and that the action was not instituted in good faith by the defendant in error.

The government lands enclosed by this fence were lands upon which the plaintiffs in error had pastured their cattle as a part of the public domain for a long time previous to the existence of the defendant in error.

The evidence on behalf of defendant in error was insufficient to establish the allegations of the petition, and, consequently, its case failed. Each of plaintiffs in error was examined, and each denied, in any manner whatever, driving his cattle over or upon or across any of the lands of defendant in error, for any purpose whatever of having said cattle trespass upon said lands, or to eat or consume the feed or grass growing thereon, and were never so driven except when it became necessary to take the cattle off such land when said cattle were being driven by defendant in error's own employes from the southern part of the so-called pasture, for the purpose of turning them out of the fence at a distance of something like eight or nine miles from where the cattle were first originally taken by defendant in error's employes.

It also appears that all of plaintiffs in error were exceedingly careful, in turning their cattle inside defendant in error's fence, to turn them in only upon government land, or upon the land belonging to some of plaintiffs in error, and in no instance did they turn them in on de-

fendant in error's land, although it was not at all necessary for them to observe this precaution.

Clearly, if defendant in error did not desire the cattle of plaintiffs in error to drift upon its lands, it should not have built the fence in question, for as long as the fence in question remained, so long would cattle within its boundaries, in course of time, drift upon portions of defendant in error's lands.

The defendant in error, in its evidence in chief, asked the witness, Wilson, the following question: "As a practical stockman, what is your judgment as to the number of cattle that can be supported on government land within the enclosure constituting the Platte Valley Sheep Company's pasture, for a period of five months, between November 1st and April 1st?" This question was objected to, and was improper under the issues in the case. The whole theory upon which the question was propounded was this: That defendant in error had a right to construct such fences as it saw fit, and to enclose within such fences as much government land as it saw fit, and then to turn as many of its stock within such enclosure as it saw fit, and thereby appropriate to its own use the pasture on such government land, and to keep every other stockman out of such enclosure and off such land. The case of Lazarus v. Phelps, 152 U. S., 81, does not authorize such claim.

*Van Orsdel & Burdick,* for defendant in error.

The proposition is conceded that a distinction exists in the law, respecting the liability of the owner, between live stock roaming at will on the public domain and may wander upon the unfenced lands of a private owner, and live stock under the control of a herder deliberately driven upon such lands or permitted to go upon such lands while under the control of the herder. The proposition, however, has no bearing in the case at bar, (1) because the wilful and deliberate trespass committed by the plaintiffs in error

is overwhelmingly established by the evidence; (2) because the plaintiffs in error persistently drove their cattle upon government land near the line of the land of defendant in error and left them at such points that, in order to get water, they would necessarily trespass upon the lands of defendant in error. Cattle so handled are not entitled to be considered as roaming at large upon the public domain, but rather as cattle under the control and direction of a herder. The cattle of plaintiffs in error were daily herded and driven in the vicinity of the lands of defendant in error, and placed in a position where of necessity they would trespass upon such lands.

The necessity for any distinction between cattle at large upon government land and sheep under the control of a herder is rapidly passing away in this western country. To be roaming at large upon the public domain within the purview of such distinction, the cattle must be so situated that their location is not within the immediate knowledge of the owner. Few instances of that kind are now to be found in the State. In the vast majority of cases the location of their cattle is daily known to the owners, and hence they could not defend against trespasses committed by such cattle upon the theory that they were roaming at large upon the public domain. (Hecht v. Harrison, 5 Wyo., 279; State v. Johnson, 7 Wyo., 512; Cosgriff v. Miller, 10 Wyo., 190.)

This is not an action for the illegal fencing of government land, nor for the obstruction of free passage over such land. The United States alone can complain of fences or obstructions upon the public domain. The mere license common to all persons to graze their stock on public lands does not give an individual such a color of title or privity with a source of title as will enable him to maintain a suit for illegal fencing. One private owner of live stock grazing upon the public domain may enjoin another owner from interfering with his live stock, but this is a different question. The legality or illegality of the fence in ques-

tion is not before this court for consideration for two reasons: (1) A demurrer was properly sustained to the second defense, setting up the construction of the fence, and the fence must be presumed to be legal. But if it is illegal, which is not admitted, that fact has nothing to do with this question. Plaintiffs in error would not be benefited in their contention even though there had been no fence enclosing the land, and they could not lawfully drive their stock upon the lands of defendant in error nor across the same, nor to a point on the public land, and turn them loose there so near the line of the land of defendant in error that the cattle would necessarily trespass upon such land in order to secure water and sufficient food. (2) The state law does not prohibit the construction of fences upon government land, and if the fence in question is an illegal one under the laws of the United States, that fact would have to be proven. This court cannot take judicial cognizance of a statute of the United States. If plaintiffs in error relied upon any such statute to support their claim that defendant in error is in court with unclean hands, it was their duty to plead and prove it. A statute of the United States must be proven, the same as the statute of a foreign state. There is no question of government lands involved in this case. The defendant in error is merely seeking by injunctive relief to protect its rights to the full enjoyment of its lands. It does not seek to deprive plaintiffs in error of any right to pasture their stock upon the land of the United States.

It is conceded that owners of live stock have a right or license to pasture their stock upon the public domain, but that does not permit such owners to turn their stock loose so near the boundary line of private lands that they will necessarily wander thereon and depasture the same. There is no evidence, however, that the fence in question was upon government land or enclosed any such land.

The demurrer to the second defense in the answer was properly sustained. No affirmative relief was asked by

defendants below. The trial court took the view that, even if the lands of plaintiffs in error were embraced within an enclosure together with government land, that fact would not justify the defendants in deliberately, wilfully and intentionally driving, holding and herding their cattle upon the lands of the plaintiff for the purpose of destroying the same. It, therefore, constitutes no defense to the action. It is immaterial that the plaintiffs in error may have pastured government lands and the lands of defendant in error long prior to the purchase of these lands by the latter.

If the plaintiffs in error turned more cattle into the enclosure than the government land would support and they were necessarily compelled to trespass upon the private lands, right for damages would follow and an injunction would lie to restrain the continuation of such trespass. (Hecht v. Harrison, 5 Wyo., 279; Lazarus v. Phelps, 132 U. S., 51.) Hence the question propounded to the witness, Wilson, as to the number of cattle capable of being supported upon the government land was competent and relevant.

POTTER, JUSTICE.

This action was instituted November 23, 1900, by the Platte Valley Sheep Company, a corporation, against Price Martin, Winifred Davis and George Bennett to obtain a decree enjoining the defendants from driving, holding, grazing and feeding their cattle upon any of the lands of the plaintiff described in the petition, and from causing said cattle to consume and destroy the grasses and herbage growing on said lands, and also from threatening, intimidating or causing injury to the employes, agents or officers of the plaintiff.

The petition alleges that plaintiff is the owner in fee and in possession of about eight hundred acres of land therein described, and is the lessee and in possession of certain other described lands amounting to about six thousand acres. It otherwise appears that the lands claimed under

lease belong to and have been leased from· the State. It is further alleged that the plaintiff is engaged in the live stock business, the successful carrying on of which requires the undisturbed use and possession of the premises aforesaid; and that plaintiff's custom is to reserve the herbage and grasses growing on said lands for the grazing and pasturing of its live stock thereon during the winter months·; and that loss or destruction of such herbage and grasses will result in serious loss to the plaintiff by the starvation of its live stock.

It is thereupon averred that.the defendants, and each of them, well knowing the lands aforesaid and the boundary lines and location thereof, and well knowing the facts as to the custom and necessities of the plaintiff, and wilfully and maliciously designing and intending to annoy, harrass and distress the plaintiff, and maliciously, intentionally and deliberately designing to deprive the plaintiff of the grasses and herbage growing on said lands, and to appropriate the same to their own use, have habitually and continuously, since on or about the 15th day of November, 1900, trespassed upon said lands by driving and herding one thousand head, more or less, of defendants' cattle thereon, and causing them to eat and destroy such grasses and to interfere with, pollute and consume the water supply provided on said lands by plaintiff for the uses of its live stock; and that the defendants are without any title or claim or color of title to any of said lands; that defendants continue to so trespass and threaten to continue the same to the irreparable injury and loss of the plaintiff. It is further averred that the defendants have threatened the employes of plaintiff with bodily harm if they shall undertake to remove their cattle from such lands.

The defendants filed separate answers, each admitting the corporate character of plaintiff and plaintiff's ownership and possession of the lands as set forth and described in the petition, and that plaintiff is engaged in the live stock business, and denying substantially all the other ma-

terial averments of the petition. Upon the issues thus framed, the cause was tried and proceeded to final judgment, from which judgment the defendants have come to this court on error.

With the exception of two small tracts, the lands of plaintiff are located in Townships 30 north, Ranges 67 and 68 west, of the Sixth principal meridian. The greater body thereof comprises the eastern tier of sections in Township 30, Range 68, and embraces all of Sections 1 and 36, and the major portions of Sections 12, 13, 24 and 25, and also three quarters of Section 14. The lands in Range 67 embrace the greater part of Section 6, north half of Section 5, and certain parts of Sections 7, 18, 33, and small fractions of Sections 27, 28 and 34.

The evidence discloses that these lands are all contained within an enclosure constituting what the witnesses for plaintiff designate as the Platte Valley Company's pasture, which pasture, however, includes in addition considerable government or public land. The government land in such enclosure equals at least in quantity the lands to which plaintiff lays claim, and it may slightly exceed that quantity. It appears without contradiction that, before the occurrence of the acts leading up to this action, the plaintiff had constructed a fence enclosing its said lands in the two townships named, together with the government or public lands aforesaid. The exact location of the fence was not ascertained upon the trial; but enough appeared to show the location approximately. It appears that the North Platte River skirts the western part of Sections 25 and 36, arriving at those sections from a westerly or northwesterly direction. The fence is all constructed on the northern or eastern side of that river, and is so located that it takes in several sections of government land on both the west and east side of plaintiff's lands. On the west, in Range 68, it seems probable that there are three or four sections, if not more, of unappropriated public land of the United States, and in Range 67, on the east of plaintiff's lands,

there is quite a body of public lands, ranging from three to five miles wide—east and west—and from three to five miles long—north and south. Interspersed, however, appear to be some small tracts claimed by plaintiff in Sections 27, 28, 33 and 34. Generally, at least, none of plaintiff's lands are otherwise enclosed; that is to say, they are not separated by any enclosure or barrier from the government lands within the so-called pasture. All the running or living water within the pasture is located upon lands owned or leased by the plaintiff. Gates have been provided at various places along the line of fence for ingress and egress; and it seems that the instructions of the company were to leave gates on every trail. There is at least one road, and probably others, running through portions of the pasture, and over parts of plaintiff's lands, used habitually by the public without objection. The government land within the pasture, in Range 67, comprises quite a body of contiguous sections, the approximate dimensions of which have already been given.

The defendants are ranchmen, each owning a herd of cattle, neither of them, we understand, having to exceed four or five hundred head. They own their cattle in severalty, but are neighbors residing on the south or west side of the North Platte River on or in the vicinity of Section 35, Township 30, Range 68, and hence on the opposite side of the river to plaintiff's lands. It appears, although there is no evidence of an agreement or preconcerted arrangement to that effect, that they have frequently rounded up their cattle together, and it is to be fairly understood that their cattle usually range together. Several instances occur in the testimony where they had been observed together working with or driving bunches or herds of cattle, apparently composed of cattle belonging to each, or at least to more than one of the defendants. This fact, however, is perhaps not very material here, as no question of misjoinder of parties is suggested.

With the exception of two, or possibly three, instances, the testimony does not show that either of the defendants

actually drove or held cattle upon any of the lands of plaintiff for grazing or feeding, or by any overt control over the cattle caused them to eat the herbage or grasses upon plaintiff's lands. No evidence was offered in support of the allegation that defendants' cattle polluted the water on the lands, or consumed it, except that at times they drank of such water. Excepting the two or three occasions above referred to, the acts of defendants in driving their cattle upon the lands of plaintiff consisted in driving them across and over portions thereof, either in taking them home or getting them to government land.

We think it is disclosed by the testimony that on a number of occasions one or more of the defendants drove cattle across the lands, without permitting them to stay or graze thereon. Such acts more frequently occurred with respect to Sections 24, 25 and 36, in Range 68. It was possible for the defendants, and no doubt convenient, to drive their cattle across the river and over these sections to the government land on the other side, although it is shown that they could have reached government land without crossing any land belonging to plaintiff.

However, the proof shows that at one time, shortly before the commencement of this suit, about three hundred head of cattle that had been gathered by defendants outside the enclosure were driven into it and upon Section 1, in Range 66, and held there at least fourteen hours. They were allowed to water there and graze, and, afterwards, were driven west upon public land in the enclosure and turned loose. On another occasion a bunch of cattle were driven upon land in Section 33, in Range 67, for water, and the fence was torn down; but it appears that the party active in that matter claimed a homestead on the section, and that plaintiff's fence encroached upon it; and it also appears that plaintiff's employes at once proceeded to reconstruct the fence upon plaintiff's land, and thereby excluded the cattle from such land at that particular point.

But the chief contention grows out of the fact that de-

fendants frequently, if not indeed habitually, drove their cattle, or some of them, through gates in the fence to and upon government land and there turned them loose and left them, allowing them to range, graze and roam at will. The reason that this act was frequently repeated doubtless resulted from the conduct of plaintiff's employes in driving the cattle from the enclosure. Defendants asserted the right to permit their cattle to graze upon the public lands inside the fence, and having turned them loose there, when they found them driven out, they again drove them into the enclosure upon the public domain. The employes of plaintiff testify that they never drove the cattle of defendants off the public lands; but that whenever they discovered them trespassing upon the lands of plaintiff they did, according to instructions, drive them away from those lands; but it is shown that at least on some occasions the cattle so found were driven entirely out of the enclosed field by men in plaintiff's employ.

It is no doubt established by the proof that, after being turned loose within the enclosure upon government land, and this was done at times, within a mile, or even half mile, from the boundary line of plaintiff's ground, some of them wandered upon such ground and watered and grazed there. It may be conceded that this occurred frequently. But whenever they were so found they were driven off by plaintiff's employes.

The evidence as to the habits of cattle when so turned loose and permitted to roam at will is that they will go to the nearest water for the purpose of satisfying thirst; and a knowledge of such habit was admitted by the defendants when testifying. Therefore, it is contended that, since the only available water within the enclosure is located upon the lands of plaintiff, and the latter controls the entire water supply in the field, the acts of defendants in turning their cattle loose within the field, although upon public land, were done with a knowledge that they would necessarily roam and wander upon plaintiff's unenclosed ground therein, and not

only obtain water thereon, but eat and consume the grasses; and it is argued that such acts, in consequence of the facts aforesaid, amounted to an intentional and deliberate trespass on the part of defendants, and constituted in legal effect a driving and holding of the cattle upon plaintiff's lands. It is said, and this seems to be supported by the language of the decree, that the trial court took that view of the matter, and held that the defendants had committed wilful trespass on plaintiff's lands by driving them inside the field, and then leaving them without restraint, and allowing them to roam at will.

There is some evidence to the effect that on one occasion one of the defendants uttered to an employee of plaintiff a threat of bodily injury in case he should drive the cattle away from plaintiff's lands. That such a threat was made is denied, but it is testified on the part of defendants that they merely demanded that there be no interference with their cattle while on public land. They also deny in their testimony certain evidence from plaintiff's witnesses that they had stated an intention to put their cattle upon land in the enclosed field regardless of its ownership.

Whatever purpose may have been expressed by any of the defendants, no effort was made to show that there had been any overt attempt to inflict bodily harm upon plaintiff's employes, nor was it shown, except upon the two occasions above referred to, and possibly one other, that defendants, or either of them, had either driven and held cattle upon plaintiff's lands, and thereby wilfully depastured them, or had turned them loose upon such lands.

The District Court found generally for the plaintiff, and decreed that the "defendants, their agents and employes be, and they are, and each of them is hereby permanently restrained and enjoined from in any manner driving, herding, holding, grazing and feeding the said defendants' cattle, or any of them, upon any of the plaintiff's lands, and that the said defendants be forever and permanently restrained and enjoined from threatening, intimidating or causing injury

of any character whatsoever to the employes, agents or officers of the said plaintiff; and be forever permanently restrained and enjoined from in any manner trespassing upon the said lands of the said plaintiff'' (describing them). And the plaintiff was awarded a judgment for its costs.

It must be admitted, we think, and we understand that it is admitted, that the practical effect of this decree is to prohibit the defendants from turning any of their cattle loose in the enclosed field, whereby they might wander or drift upon any of the lands of plaintiff. They are not only enjoined from driving, holding or herding their cattle on such lands, but from in any manner grazing or feeding them thereon, and from in any manner trespassing on the lands. So construed, the judgment requires the defendants to actively prevent their cattle from going or straying upon any of the lands of plaintiff; and hence should any of their cattle be upon adjacent lands, however lawfully, whether the fence aforesaid be there or not, it would be the imperative duty of defendants, in compliance with the decree, to take sufficient measures to restrain such cattle from straying upon plaintiff's lands. And that is the contention made here by counsel for defendant in error, plaintiff below.

It is not insisted that the plaintiff had a right to build a fence enclosing government lands, nor that it had or has any right thereby or in any other manner to appropriate to itself the exclusive use or privilege of such lands. It is not denied that defendants have a lawful right to drive and graze their cattle upon the public lands, whether within or without plaintiff's enclosure; but it is earnestly argued that they should be required to prevent the cattle from following their natural propensity to wander upon plaintiff's land in search of water; and that a failure to so restrain them will amount to a wilful trespass.

We are of the opinion that there is sufficient evidence to justify a decree enjoining defendants from wilfully driving their cattle upon or across plaintiff's lands situated within the enclosed field, except possibly along such roads or high-

ways thereon as may be open to the use of the general public, or from deliberately holding them upon the lands for the purpose either of watering or feeding them. Whether the decree ought to have gone beyond that depends upon a consideration of the point above stated. In this consideration it is to be remembered that the petition does not allege that plaintiff's lands are or were enclosed. No reference is made in that pleading even to the fence enclosing the large pasture. The right asserted by plaintiff is not grounded, at least in the petition, upon any peculiar rights supposed to have been secured in consequence of plaintiff's construction of an exterior fence enclosing not only its own lands, but a large body of other land surrounding it. Indeed, the proposition contended for is urged by counsel irrespective of the existence of the fence, or its confining influence upon cattle inside the field. Counsel maintain that where the nearest available water is located upon the unenclosed lands of a private owner, to the knowledge of the cattle owner, it is the latter's duty to keep his cattle that are at large from obeying their natural instinct and wandering upon such land; and that he will be guilty of an actionable wilful trespass if he should default in that duty. It is only necessary to state the proposition to show its far-reaching effects. If it be true, then by acquiring title to land on the open range containing a water supply a person may, though his land be entirely unenclosed, recover damages from an owner of cattle upon the range which may stray upon the land if the owner shall be aware of the possibility or probability that his cattle will wander to and upon such land because of the water there.

There is no attempt in this case to deny that all stock-growers, under an implied license from the government, are free to depasture and graze their live stock upon the public lands, where they are left open and unenclosed by the government, and are not made subject to any express restrictions or prohibitions as to such use. That such a license and right exists was recognized in the leading case

of Buford v. Houtz, 133 U. S., 320. The matter was referred to in Hecht v. Harrison, 5 Wyo., 279. And stringent laws have been enacted by Congress prohibiting the construction of fences upon the public lands and thereby enclosing them. It is not contended that a person acquires a superior right to the use of unappropriated public land by merely enclosing it with a fence. We think it must be conceded in this case that if defendants gained an entrance with their cattle into the enclosure, and upon the public land therein, in a peaceable manner, they were not unlawfully there; and that it was not unlawful for defendants to permit their cattle to graze upon or run at large upon such public land. And, hence, in turning cattle loose upon the public land, the defendants did not commit an unlawful act. Before proceeding further, it is to be observed that the case would not be different had the enclosure been still larger and embraced within it a much larger body of government land. It appears that, outside of the supply of water on plaintiff's land, the nearest water to defendant's cattle while on Range 67 was at least three miles distant; and it follows, if the contention of plaintiff be sound, that it might have enlarged the enclosure by taking into it considerable more public land and required defendants, should their cattle be at large upon it, to use active measures to prevent such cattle from trespassing on the lands of plaintiff otherwise unenclosed. It follows, too, if that contention be sound, that the rule as to trespassing cattle in this State would be reversed under such circumstances as those in the case at bar.

The common law rule requiring the owner of cattle to confine them or in default thereof to answer for any damages occasioned by their trespasses upon the lands of another is abrogated, or, rather, never obtained, in this State, nor in the other western states. Indeed, that rule was either not adopted or has been abrogated by statute in a number of other states, notably in Virginia, West Virginia, Mississippi and Texas, and at times in the his-

tory of some of the states of the east and middle west, a different rule was held to obtain either in consequence of custom or necessity, or the express provision of statute.

In this State cattle are permitted to run at large; and the principle in force here is that no actionable trespass is committed when domestic animals lawfully at large wander upon and depasture the unenclosed lands of a private owner. (Cosgriff v. Miller, 10 Wyo., 190; State v. Johnson, 7 Wyo., 512; Hecht v. Harrison, 5 Wyo., 279.) But it is well settled that this principle will not permit the owner of such animals to wilfully and knowingly drive them upon the premises of another, although unenclosed. (Cosgriff v. Miller, *supra,* and cases cited.) Under the operation of the principle aforesaid, it is incumbent upon a land owner, in order to prevent domestic animals lawfully at large from wandering and trespassing thereon, to properly enclose his land; but if he allows it to remain unenclosed, and the cattle of others, lawfully at large, wander upon and depasture it, the owner of such cattle will not be guilty of an actionable trespass.

The effect of the contention on behalf of defendant in error is to alter or reverse this doctrine, and that is also the effect of the decree in this case, as we think it is to be reasonably construed. The defendants are in effect commanded to refrain from permitting their cattle to run at large on government land; and, although they are not restrained from grazing their cattle on such land, they are required to prevent them from wandering upon the adjacent lands of plaintiff, which are not enclosed separate from the government land, and are not protected by any barrier from the invasion of cattle on the neighboring public land. And, moreover, since plaintiff's land contains the only available water supply, it offers a constant temptation to such cattle to go upon it. To the extent that the decree so operates, it is in our opinion erroneous.

In the Virginia case of May v. Poindexter, 47 L. R. A., 588, the plaintiff sought to enjoin defendant from permit-

ting his cattle to trespass on plaintiff's property. A temporary injunction was granted restraining defendant from allowing, permitting or suffering his cattle and horses to trespass upon plaintiff's premises. On final hearing, however, the injunction was modified, so as to restrain defendant from turning his cattle and horses upon the lands of plaintiff; and the court refused to restrain defendant from permitting or suffering them to trespass on such premises. Both parties appealed, and the Court of Appeals affirmed the decree. The court said: "The general law imposes on the landowner no obligation to fence, but, when land is left unenclosed, the owner takes the risks of trespass thereon by the animals of others running at large, and can maintain no action for trespass. A 'lawful' fence is, necessarily, a condition precedent to the right to recover. The statute plainly indicates this, and to hold otherwise would annul the whole law on the subject." But the rule was also recognized in that decision that, while an owner of cattle is not liable for the passing of the cattle of their own accord upon the unfenced lands of another, he has no right or authority to drive them there, and that, for such conduct, he is answerable for damages. In that case the parties were owners of adjacent lands. (See also Baylor v. B. & O. R. Co., 9 W. Va., 270.)

In the much cited case of Buford v. Houtz, 133 U. S., 320, an injunction was refused on the ground that its effect would be to prevent the defendant from grazing his sheep upon the unappropriated public lands of the United States, and would practically grant to the plaintiff the exclusive use of such lands.

In Washington the pasturing of sheep on the lands of another, whether enclosed or unenclosed, is made unlawful. And hence it was held that it was no defense in a suit to enjoin such pasturage to allege that complainant's lands comprise every alternate section, that they are unenclosed, and that it is necessary for defendant's sheep to pass over them to reach the intervening government sections, al-

though the facts were held proper to be considered in fixing the limits of the injunction. But it was said by the court so holding that the case of Buford v. Houtz, *supra*, would be conclusive in defendant's favor if the local law upon which that decision rests prevailed in the State of Washington. (N. Pac. Ry. Co. v. Cunningham, 89 Fed., 594.)

It was said in Texas: "Whether the defendant's cattle were rightfully on these 5,000 acres or not is a matter that does not concern the plaintiff. It must show in itself the right to exclude him. If, therefore, defendant was grazing his cattle on lands from which the plaintiff had no right to exclude him, and the plaintiff enclosed the lands and cattle in his pasture with lands of its own, it cannot complain that defendant's cattle wander over on its tracts and graze thereon. It should fence around on the lines of its lands, so as to exclude them from the lands it does not own, or aver that it had enclosed the lands not owned by it, and was in possession thereof, and that defendant, having no right to possession or use thereof, forceably broke and entered its said enclosure and thus wrongfully placed his cattle thereon." (Creswell Ranch & Cattle Co. v. Scoggins, 15 Tex. Civ. App., 373.) The general rule prevailing in this and other states in respect to cattle running at large is instructively applied in the following cases: New Orleans, &c., R. Co. v. Field, 46 Miss., 573; Jones v. Witherspoon, 7 Jones L. (N. C.), 555, 78 Am. Dec., 263; Ely v. Roshalt, 11 N. D., 559; Chase v. Chase, 15 Nev., 259; Markin v. Priddy (Kan.), 18 Pac., 514; Oliver v. Hutchinson (Or.), 69 Pac., 139, 1024; Addington v. Canfield (Okla.), 66 Pac., 355.

But, it is argued, since the defendants knew that their cattle would naturally wander upon the premises of plaintiff if they allowed them to graze unrestrained upon the neighboring public land, their action in turning them at large upon the public land was tantamount to driving them upon plaintiff's premises. This argument ignores the very

distinction under the rule between the case where cattle at large wander upon unenclosed premises, and where their owner wilfully drives them thereon, and practically removes the only reason for the rule prevalent here and in so many jurisdictions in this country. Every person knows that his cattle and horses permitted to run at large are liable to roam upon and depasture unenclosed premises. One who turns cattle upon his own unenclosed ground to graze at will must know that they will probably wander upon the adjoining unenclosed premises of his neighbor, if there be such; and yet that fact has not been deemed sufficient to constitute him a wilful trespasser. It is in just such cases, under the doctrine prevalent here, that the owner of the animals has been held not liable for the injury caused by them.

A witness for the plaintiff was asked to state the number of cattle which could be supported upon the government sections within the enclosure, for the period during which it was claimed that defendants had allowed their cattle to graze thereon, for the evident purpose of showing that the quantity of such land was insufficient to maintain defendants' cattle for that period, and that it would, therefore, follow that they intended their cattle to graze upon and depasture plaintiff's premises. This proof was introduced, we understand, upon the theory of the case of Lazarus v. Phelps, 152 U. S., 81. That was not an injunction case. That action was brought for the rental value of plaintiff's lands located in a large field containing also a large quantity of intervening land of defendant. The defendant overstocked the field, which the court held indicated an intention on his part to avail himself of the pasturage of plaintiff's lands, and, therefore, that the facts justified an instruction that if defendant had overstocked the enclosure, he should be held liable to the plaintiff for the rental value of the lands. The defendant, it seems, was in possession of the field, and exercised exclusive control over it (see Lazarus v. Phelps, 156 U. S., 202), having purchased from

plaintiff's lessees all their cattle and horses within the enclosure, and he had entered into some negotiation with plaintiff to lease his lands, but nothing came of it. In regard to the facts in that case, the court said that the law raised therefrom an implied promise to pay a reasonable sum for the use and occupation of the lands, even though negotiations for a new lease had proven unsuccessful.

There is not much evidence in the case at bar concerning the amount of damage done to plaintiff's premises by defendants' cattle, or as to the extent to which their cattle had grazed upon and depastured such premises. It appears that the plaintiff itself kept about one hundred head of cattle in the pasture, and with its consent an employee pastured about two hundred head there. But conceding that enough was shown, upon the principle announced in Lazarus v. Phelps, *supra,* to render defendants responsible for the value of the pasturage of which they had availed themselves, it does not follow that an injunction would be proper to prevent them from incurring such liability, or from allowing their cattle to go at large upon the government land. It is not to be supposed, from anything said or decided in Lazarus v. Phelps, that the court would have sustained an application to enjoin Lazarus from allowing his cattle to be turned at large upon his own land within the enclosed field, merely because they might and probably would wander upon and depasture the lands of Phelps. Whether an injunction would have been deemed an appropriate remedy to prevent the overstocking of the field by one owner, or to limit the number of animals that such owner might pasture in the field without violating the right of the other owner to the use of his lands may be open to conjecture, but clearly, we think, the case is not authority for the proposition that the one owner might be restrained by the court's process from turning *any* of his live stock within the enclosure and upon his own land, and thereby afford to the complaining party the exclusive enjoyment of not only his, but the other's land as well.

In the case of Cosgriff v. Miller, *supra,* this court held that the facts disclosed not only an intention to depasture the lands there in controversy, but that they had been grazed upon and depastured, and that the sheep had been knowingly and wilfully driven upon the land by herders, and in that manner caused to eat the grasses growing thereon to the damage of the land owner. The chief question in that case was whether the sheep owner had a right to go upon the premises of the other party in that manner, in consequence of the latter's failure to mark the boundaries of his land, which comprised a number of sections alternating with government sections. It was held that the failure of the land owner to separate his land from the neighboring government land by a fence, or other barrier, or by some method of marking, so as to plainly distinguish them, did not authorize the owner of sheep to knowingly and deliberately drive and herd his sheep thereon and depasture the premises; and the facts were deemed adequate to prove that the sheep owner had so driven and herded his sheep upon the private lands, knowingly and intentionally. That was an action in trespass for the recovery of damages.

We are unable to avoid the conclusion that the decree goes too far in this case, and, in effect, awards to the plaintiff below the use of the government land in its enclosure to the exclusion of its neighbors, the defendants, and reverses the principle recognized by our laws, customs and decisions.

We think it unnecessary to say much in regard to the ruling of the court upon the demurrer to the second defense of the answer. It was set out in that defense that the plaintiff had constructed the fence, so often adverted to in this opinion, thereby unlawfully enclosing a large body of public land, and that the suit was brought for the purpose of unlawfully excluding the defendants from any use of such land; and it was, therefore, charged that the action was not instituted in good faith. It was competent

to show the whole situation under the denials contained in the answer. The facts alleged as to the fence and government land were brought out in the evidence. The whole situation was apparently before the court by proof, and the error, if any, in sustaining the demurrer could hardly be regarded as prejudicial. But we are not prepared to agree that the demurrer was erroneously sustained. The right to relief was based upon the alleged fact that defendants had driven, held and herded their cattle upon the lands, and threatened to continue such acts. As against such charges, it is not perceived that the allegations demurred to constituted a defense. The fact that plaintiff had constructed an unlawful fence, and enclosed thereby public land, would not justify the defendants in the commission of a wilful trespass upon plaintiff's lands within the enclosure.

It appears that the petition describes as owned by the plaintiff, and the same is included in the decree, the northwest quarter of the northwest quarter of Section 27, in Township 31 north, of Range 69 west, and the north half of the northeast quarter of Section 14, in Township 29 north, Range 67 west. It is not shown that these premises are embraced in the enclosure aforesaid; nor is there the slightest evidence that defendants, or either of them, have in any way trespassed thereon or threatened to do so. They are respectively situated several miles from the other premises, and there seems to be no showing to justify extending the injunction to them.

The judgment will be modified so as to perpetually enjoin the defendants, their servants, agents and employes from wilfully and knowingly holding or actively herding their cattle or driving them upon or across any of the premises of plaintiff described in the petition and located in Townships 30 north, Ranges 67 and 68 west, except driving them without grazing along any public highway across said premises, and in other respects the judgment will be affirmed.                                              *Modified.*

Corn, C. J., and Knight, J., concur.

ON PETITION FOR REHEARING.

Per Curiam.

Plaintiffs in error apply for a rehearing. No point is presented on the application that was not carefully considered on the previous hearing. The evidence in the opinion of the court justified the injunction as modified by our order. No costs for briefs were taxed against either party, but the plaintiffs in error were allowed their other costs in this court. We think that was not unjust to the plaintiffs in error in view of the final disposition of the case and the reasons therefor.

Rehearing denied.