DORMAN, RESPONDENT, *v.* ERIE, APPELLANT.

(No. 4,835.)

(Submitted May 26, 1922. Decided June 26, 1922.)

[208 Pac. 908.]

*Assumpsit—Trespass—Livestock—Depasturing Land—Fences— Complaint—Sufficiency.*

Implied Contract—Livestock—Trespass—Depasturing Land—Complaint— Sufficiency.
1. In an action on an implied contract to recover the reasonable value of the pasturage of livestock, the complaint alleging ownership and right of possession in plaintiff, the ownership of the animals in defendant, that the lands were inclosed by a fence which defendant broke down and pastured them thereon, and the reasonable value of the pasturage per head per month, stated a cause of action.

Livestock—Trespass—Depasturing Land—Liability of Owner—Fences.
2. Where a livestock owner, claiming a strip of land thirty feet wide and one-half mile in length within plaintiff's inclosure, turned his

---

2. Liability of owner for trespass of cattle, see note in 22 L. R. A. 55.

[63 Mont. 579.]

cattle loose under circumstances which showed that it was intended that they should go into plaintiff's inclosure and graze upon his lands, he was liable for the damage done by them to plaintiff's pasture, the fact that plaintiff did not maintain any fence between the strip and defendant's land being no defense.

*Appeals from District Court, Fergus County; Jack Briscoe, Judge.*

ACTION by Orris Dorman against R. A. Erie. From judgment for plaintiff and an order denying defendant's motion for a new trial, defendant appeals. Judgment and order affirmed.

*Messrs. Belden & De Kalb,* for Appellant, submitted a brief; *Mr. H. Leonard De Kalb* argued the cause orally.

*Messrs. Blackford & Huntoon,* for Respondent, submitted a brief; *Mr. J. C. Huntoon* argued the cause orally.

(NOTE: The authorities cited and relied upon by Counsel are referred to in the opinion; and it is therefore deemed un-necessary to repeat them here.)

MR. JUSTICE FARR delivered the opinion of the court.

This action is on an implied contract for the value of the pasturage of cattle and horses. The complaint alleges the ownership and right of possession of the lands in the plaintiff; the ownership of the cattle and horses in the defendant; that the lands were inclosed by substantial fences; that the defendant broke into and entered on to the lands and caused his cattle and horses to be pastured thereon during a specified period of time; that the pasturing was of the reasonable value of $1.50 per head per month, amounting to the total sum of $266.25. It is then alleged that the plaintiff "hereby waives the tort for damages for the pasturing of said cattle * * * and sues for the reasonable value of the pasturage * * * for the time hereinbefore mentioned." The complaint states a

cause of action. (*Monroe* v. *Cannon,* 24 Mont. 316, 81 Am.
St. Rep. 439, 61 Pac. 863.)

The case was tried to the court without a jury. The facts
[2] were substantially as follows: Plaintiff was the owner of
280 acres of land in section 25, township 19 north of range
13 east, and his wife held under lease from the state of Mon-
tana section 36, in the same township and range, school land,
all of which made a compact body which was inclosed under
one fence. Mrs. Dorman had assigned her claim to the plain-
tiff prior to the commencement of the suit, and the case was
tried in the lower court on the theory that the plaintiff was
the owner and in the possession of all the land, and in this
opinion, for the purpose of brevity, the lands so inclosed by
fence will be referred to as plaintiff's lands. Defendant owns
land adjoining section 36 on the south (the east half of section
1, township 18 north, range 13 east), and he also owns land
in section 6, township 18 north, range 14 east, which corners
with the southeast corner of section 36. Defendant's land in
section 1 is inclosed by a fence, and the fence on the north
side is about thirty feet south of the section line on section 1.
The fencing of the school section 36, on the east and west sides,
joined the defendant's fence on his section 1, leaving a thirty-
foot strip, one-half mile in length, of defendant's lands within
the plaintiff's inclosure or pasture. There was a wire gate in
the southeast corner of plaintiff's pasture, one end of which
was fastened on the defendant's fence.

At the conclusion of the plaintiff's case the defendant made
a motion for a nonsuit, but it was not ruled on by the court,
and the defendant was then sworn, and testified in his own
behalf, and his was the only evidence in defense. The cause
was then submitted to the court for decision, which was given
in favor of the plaintiff for the full amount claimed. No
special findings were asked for or made. Defendant appeals
from the judgment and from the order denying his motion
for a new trial.

The only question presented, therefore, is whether all the evidence, including that of the defendant, was sufficient to sustain the judgment of the court. Defendant contends that the evidence is insufficient to create any legal liability against him.

Defendant's cattle and horses were seen in plaintiff's pasture on frequent occasions during the period of time complained of. He was seen going among the stock while they were in the pasture, apparently looking them over. On one occasion he was seen rounding up some horses on the section east, and to drive them west in the direction of the pasture, and on another occasion he was seen driving cattle in that direction. There was water on plaintiff's land, but none, so far as appears, on the defendant's thirty-foot strip. Defendant had some grain growing on his land in section 1, and there was also some grain on the land spoken of as the Gorman land to the east of 36. He was summer-fallowing his land in the northwest corner of section 6. Plaintiff testified that, in a conversation with the defendant relative to the stock being in the pasture, defendant claimed he had a right to turn them in on this thirty-foot strip of his land which was in the plaintiff's inclosure. Defendant testified: ''As to whether I had some pasture lands of my own, I had thirty feet on my north line. I had that fenced off about thirty feet for half a mile along the school section. * * * Yes; they were over there. * * * This gate [referring to the southeast corner] was not kept up; it was down half the time. My cattle got into this school section because my fence was down; my fence on the north of sections 6 and 1. * * * I permitted my cattle with my knowledge to go through the gate if they saw fit on to thirty-six, and from that on up north to the 280 acres north of that. * * * My contention was at that time that I had thirty feet wide and a half mile long in that thirty-six inside the fence; that I had a right to put my cattle in there if I wanted to. I figured Mr. Dorman could protect himself the same as I had to protect myself.''

It was, therefore, defendant's position upon the trial, and it is the contention made by him in this court, that he did no more than he had a right to do—turn his cattle on to his own land, this thirty-foot strip—and, if they strayed upon the land of the plaintiff, where such lands were not inclosed by lawful fence, the plaintiff was not entitled to recover. It is clear that during the time complained of there was not any fence on the south line of the school section—that is, between the defendant's north fence and plaintiff's land—which left a thirty-foot strip of defendant's land one-half mile in length within the plaintiff's inclosure. And it may also be assumed that no part of plaintiff's fence was such a fence as is mentioned in section 3374, Revised Codes of 1921, as a legal fence.

Defendant contends that plaintiff cannot recover because he did not maintain a partition fence between his own and the defendant's land, as provided by sections 6777, 6778 and 6779, Revised Codes of 1921. There is not any evidence that defendant had ever demanded of the plaintiff, prior to the acts complained of, that plaintiff join with him in building a partition fence. Plaintiff had understood that the south fence of his inclosure was on the section line; but, even though he was cognizant of the fact that it was thirty feet south of the section line, the fact that there was no fence on the section line did not warrant defendant in willfully causing his cattle and horses to be pastured on the plaintiff's land. The building of a partition fence is not in this state made a condition precedent to the right to recover damages for a trespass by the livestock of a coterminous land owner.

When a coterminous land owner, situate as was the defendant, turns his stock into his own inclosure without building a fence between his own land and that of the other owner, he must be held to the common-law obligation of keeping his livestock upon his own premises, and is liable for any damage resulting from their trespassing upon the inclosure of his neighbor. (*Kobayashi* v. *Strangeway*, 64 Wash. 36, 116 Pac. 461; *Allen* v. *Allen*, 47 Utah, 145, 151 Pac. 982; *Megquier* v.

*Bachelder,* 112 Me. 340, 92 Atl. 187; *Meade* v. *Watson,* 67 Cal. 591, 8 Pac. 311; *Myers* v. *Dodd,* 9 Ind. 290, 68 Am. Dec. 624.) In the case of *Kobayashi* v. *Strangeway, supra,* the supreme court of Washington, in discussing a similar situation, said: "If, for his own protection, respondent would be required to fence at all, he would only be required to fence against cattle running at large upon public highways, the public domain, or uninclosed private lands. If appellant's cattle turned by him into his own inclosure broke through an insufficient partition fence and trespassed upon respondent's inclosed land, appellant must be held liable for all damages thereby resulting to respondent."

The smallness of the area of the strip of land owned by defendant within the plaintiff's inclosure upon which he turned his livestock, as he says, to graze thereon, is alone sufficient to force the conclusion that such was not his intention at all, but that he actually intended that they should graze and be pastured on plaintiff's land. The facts here are essentially different from those presented where livestock running at large, without the agency of the owner, stray upon the land of another. In this state the owner of uninclosed lands cannot complain as long as they remain a portion of the commons that the livestock of another lawfully at large, and not in the charge of a herder, should roam over and graze upon them at will; but this doctrine does not authorize the owner of stock, by affirmative conduct on his part, to appropriate the use of such lands to his own benefit. (*Tandy* v. *Fowler* (Tex. Civ. App.), 150 S. W. 481; *St. Louis Cattle Co.* v. *Vaught,* 1 Tex. Civ. App. 388, 20 S. W. 855.)

It is the universal rule that, where livestock are driven on to the lands of another, the trespasser will be held liable for damages without regard to the question of fences. (*Musselshell Cattle Co.* v. *Woolfolk,* 34 Mont. 126, 85 Pac. 874; *Monroe* v. *Cannon, supra.*) The provisions of our statute on the subject of legal fences (secs. 3374, 3378, Rev. Codes 1921) have no application to animals in charge of some person (*Herrin* v.

[63 Mont. 579.]

*Sieben,* 46 Mont. 226, 127 Pac. 323.)   In the case of *Monroe*
v. *Cannon, supra,* this court construed these provisions, and in
effect declared that the purpose of this legislation was to con-
done trespasses committed by animals lawfully running at large,
and that the common-law rule is left otherwise unchanged; and
it was held in that case that, where the defendant caused his
sheep to be herded upon lands which he knew to belong to the
plaintiff, though the lands were not inclosed, he was liable for
the damages done by them.   This decision of *Monroe* v. *Can-
non, supra,* as said by this court in the case of *Herrin* v.
*Sieben, supra,* speaking through Mr. Chief Justice Brantly, ''has
uniformly been recognized as establishing the rule of decision
in this state.   *   *   *   The result of it is that the owner of
animals may not knowingly and willfully drive or herd them
upon the lands of another, whether such lands are protected
by an inclosure or not, and that to avoid encroaching upon his
neighbor he must at his peril ascertain the line at which his
rights end and his neighbor's begin.''

The supreme court of the United States, in the case of *Light*
v. *United States,* 220 U. S. 523, 55 L. Ed. 570, 31 Sup. Ct.
Rep. 485 [see, also, Rose's U. S. Notes], in construing the
fencing statute of Colorado, speaking through Mr. Justice
Lamar, said: ''Even a private owner would be entitled to pro-
tection against willful trespasses, and statutes providing that
damage done by animals cannot be recovered, unless the land
had been inclosed with a fence of the size and material re-
quired, do not give permission to the owner of cattle to use
his neighbor's land as a pasture.   They are intended to con-
done trespasses by straying cattle; they have no application to
cases where they are driven upon unfenced land in order that
they may feed there. (*Lazarus* v. *Phelps,* 152 U. S. 81, 38
L. Ed. 363, 14 Sup. Ct. Rep. 477 [see, also, Rose's U. S.
Notes]; *Monroe* v. *Cannon,* 24 Mont. 316, 81 Am. St. Rep.
439, 61 Pac. 863; *St. Louis Cattle Co.* v. *Vaught,* 1 Tex. Civ.
App. 388, 20 S. W. 855; *Union Pac. Ry. Co.* v. *Rollins,* 5 Kan.
167, 176.)   Fence laws do not authorize wanton and willful

trespass, nor do they afford immunity to those who, in disregard of property rights, *turn loose their cattle under circumstances showing that they were intended to graze upon the lands of another."*

It would be a violation of all principles of reasoning to assume that, when plaintiff turned these cattle and horses of his through this gate, or permitted them to go through the gate at will, on to this strip of land only one-half mile in length and thirty feet wide, inclosed in plaintiff's pasture, he intended they should graze only on the thirty-foot strip. It is clear they would not remain there long. It must be assumed that he intended that they would graze and be pastured on plaintiff's land embraced in the inclosure. These animals were to all intents and purposes in charge of the defendant. They were not running at large. No part of the public domain was within plaintiff's inclosure. And it is immaterial whether defendant actually turned them into plaintiff's inclosure. It is sufficient that they were turned loose under such circumstances as showed that it was intended that they should go into the plaintiff's inclosure and graze upon his lands. It is clear that the movements of the stock in question were directed or controlled by the defendant, who knew, or was chargeable with knowledge of, the boundaries of adjacent private property, and where his stock invaded such property through either his willful act or negligence, the existence of a partition fence or a legal fence is not material. (*Chilcott* v. *Rea,* 52 Mont. 134, 155 Pac. 1114.)

The evidence is sufficient to justify the conclusion of the district court that the defendant caused his cattle and horses to be grazed upon plaintiff's land in entire disregard of plaintiff's property rights.

The judgment and order are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN and HONORABLE ROY E. AYERS, District Judge, sitting in place of MR. CHIEF JUSTICE BRANTLY, disqualified, concurs.