## No. 14,549.

BOLTEN ET AL. *v.* GATES ET AL.
(100 P. [2d] 145)

Decided March 4, 1940.

Mr. J. F. MEADOR, for plaintiffs in error.

Mr. ADDISON M. GOODING, for defendants in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THE parties to this litigation occupy the same relative position here as in the lower court and reference will be made to them respectively as plaintiffs and defendants. Plaintiffs, as owners and lessees of a large tract of unenclosed grazing land in Routt county, sought damages, actual and exemplary, as well as injunctive relief against defendants for alleged trespasses by the latter's cattle upon said lands during the years 1936 and 1937. By cross complaints defendants asked for actual and exemplary damages said to have been sustained by them in such years by reason of the alleged careless, reckless, negligent and wanton manner in which the plaintiffs, by means of dogs and men on horseback, drove and expelled defendants' cattle not only from plaintiffs' lands, but also from unfenced and unenclosed lands in and to which plaintiffs had and claimed no right. The jury returned verdicts finding the issues joined on plaintiffs' complaint against plaintiffs and in favor of defendants and awarded $350 actual damages and $1,000 exemplary damages to defendants on their cross complaints. Judg-

ment was entered accordingly and plaintiffs assign error.

Plaintiffs contend that the adverse verdict on the issues raised by their complaint principally resulted from the action of the court in the giving of Instruction No. 13. The objection thereto goes to its form as well as its impropriety. In this instruction are embodied the provisions of sections 56, 57 and 58, chapter 160, '35 C. S. A., to which reference is commonly made as the "Colorado fence law."

██ ██ In determining the correctness of the court's action in instructing on this subject, it is essential that we cursorily view the state of the law in Colorado pertaining to the liability of an owner for the trespass of his cattle. It is established that one who turns his cattle out to graze, unrestrained, upon lands where he has a right to so release them, is under no obligation to prevent them entering upon the unenclosed premises of another, and if they do so enter through following their natural instincts, he is not responsible for the damage occasioned thereby. *Richards v. Sanderson,* 39 Colo. 270, 89 Pac. 769, 121 Am. St. 167. On the other hand, it is equally well settled that the absence of a lawful fence does not justify a willful trespass. *Bell v. Gonzales,* 35 Colo. 138, 83 Pac. 639, 117 Am. St. 179, 9 Ann. Cas. 1094; *Nuckolls v. Gaut,* 12 Colo. 361, 21 Pac. 41; *Norton v. Young,* 6 Colo. App. 187, 40 Pac. 156; *Sweetman v. Cooper,* 20 Colo. App. 5, 76 Pac. 925; *Schecter v. Morgan,* 66 Colo. 35, 178 Pac. 564; *Osborne v. Osmer,* 82 Colo. 80, 256 Pac. 1092. In this connection it is further to be observed that under the fence statute an owner of livestock, turning the same at large upon land where he has a right so to do, is not liable in damages for their invasion of the private lands of another who fails to maintain a lawful fence, even though the former expects and intends that such trespass will be committed. *Williamson v. Fleming,* 65 Colo. 528, 178 Pac. 11. While such expectation or intention may be a circumstance worthy of consideration in cases of alleged willful tres-

pass, that alone will not constitute a sufficient basis for recovery in the absence of overt acts. This subject is well discussed in *Martin v. Platte Valley Sheep Co.,* 12 Wyo. 432, 76 Pac. 571, 78 Pac. 1093.

█ Plaintiffs avowedly proceeded on the theory that the trespass of which complaint is here made was deliberate and willful. The complaint charged that during the years involved defendants, who were alleged to be the owners of about 300 head of cattle which they were accustomed to run on the open range during the summer months, leased an eighty acre tract adjacent to plaintiffs' unenclosed lands, purportedly for the purpose of grazing said cattle thereon, but that, as defendants well knew, this tract was insufficient for that purpose, both as to feed and water; that defendants further knew that in order to keep and feed their cattle upon the range it would be necessary that they be grazed upon plaintiffs' lands; and that for the purpose of utilizing the same the defendants, in addition to driving their cattle thereon, put out salt on said lands to attract their cattle thereto, all without the permission of the plaintiffs and against their remonstrances.

By their answers defendants conceded the ownership of the cattle as alleged; admitted they grazed said cattle on the open range; that the described eighty acre tract alone was inadequate for the grazing of their cattle, and denied all the other allegations of the complaint. Defendants further affirmatively alleged that their cattle were released upon lands where they had a right to place them, and that if any of said cattle grazed on plaintiffs' lands, such lands at the time were not fenced in accordance with statutory requirements. Generally, under the facts presented, it may be conceded that a considerable number of defendants' cattle were on plaintiffs' lands during the grazing seasons involved, but there was no proof that they were ever actually driven there by defendants. The evidence of plaintiffs was to the further effect that in the spring of 1936 defendants

turned out their cattle, presumably the entire herd, on what was called the Eckstein homestead, about one-quarter of a mile from the boundary of lands owned by plaintiffs; that in 1937 defendants released them on the eighty-acre tract described in the complaint and that plaintiffs found salt on their lands near the stock watering places thereon. Defendants testified that during both years, besides the eighty-acre tract described in the complaint and the Eckstein homestead, they either owned or had leased several hundred acres of land in the general vicinity of plaintiffs' tracts; that in addition thereto there was on said range certain cancelled homestead entries which at least were subject to common use and that the total forage thus available was sufficient to sustain their cattle during these summer grazing seasons. They further testified that in neither of the years involved did they turn their whole heard upon either the eighty-acre tract or the Eckstein homestead, but instead divided their cattle into small bunches and released them on various different tracts of land owned or leased by them, and denied that they ever put out salt on plaintiffs' lands.

Thus the pleadings and evidence simply presented a controversy to be concluded by the jury, wherein plaintiffs relied for recovery upon a willful trespass, and the defendants defended upon the theory that they did not so transgress and that if their cattle, in fact, did depasture plaintiffs' lands, they were not liable for damages therefor because of its unfenced state. The statement of the issues on this feature of the case indubitably indicates the propriety, as well as the necessity, of instructing as to the legal effect of the fence statute on defendants' liability in the event the jury believed from the evidence that the ingression of defendants' cattle on plaintiffs' land did not amount to a willful trespass.

We now pass to plaintiffs' contention that the jury was confused by the form of Instruction No. 13.

Employing the language originally used in *Lazarus v. Phelps,* 152 U. S. 81, 14 Sup. Ct. 477, 38 L. Ed. 363, cited in *Richards v. Sanderson,* and *Schecter v. Morgan, supra,* and quoted in *Bell v. Gonzales, supra,* the court, by its instruction No. 10, advised the jury "That the law does not authorize livestock owners to take possession of another's uninclosed lands against the will of such owner under circumstances as to show a deliberate intent to obtain the benefit of another's pasturage, without making compensation." In passing it may be observed that in view of our refusal in *Williamson v. Fleming, supra,* to recognize the holding in *Light v. United States,* 220 U. S. 523, 31 Sup. Ct. 485, 55 L. Ed. 570, which to some extent is grounded on the Lazarus case, as a precedent in Colorado, it would seem that Instruction No. 10 may have been more favorable to plaintiffs than our laws warrant. Instruction No. 11 defined willful trespass, and No. 12 related to punitive damages. These were followed by questioned No. 13 which recited the essentials of the fence statute, supra, and concluded with the following words of section 58: "No person or persons shall be allowed to recover damages for any injury to any crops or grass or garden products or other vegetable products unless the same at the time of such trespass or injury was protected by a legal and sufficient fence * * *." Based upon what is said to be the conclusive tenor of these final words of the instruction, plaintiffs argue that the jury thereby was precluded from considering the issue as to the alleged willful trespass. We are not of this view. While it would not have been improper to mention that the fence law had no application where the trespass was willful, we nevertheless are of the opinion that in the light of the other instructions given, including those last mentioned and the further one to the effect that all of the instructions must be taken and considered together, the jury in no manner was misled or confused in its deliberation by the form of the questioned instruction.

■ Finally plaintiffs assert that the evidence was insufficient to warrant a verdict or judgment for exemplary damages. It will be recalled that claim therefor by defendants was grounded upon the alleged reckless and wanton manner in which defendants' cattle were expelled by plaintiffs from their lands and adjacent areas. There can be no doubt that the owner of land has a right to drive cattle of another therefrom in a careful and prudent manner. Plaintiffs contended that upon the occasions they or their employees drove defendants' cattle in the area involved, they proceeded in harmony with the rule. On the other hand, the evidence of defendants was to the effect that upon numerous occasions their cattle were dogged and driven rapidly for long distances by plaintiffs or their employees on horseback, not only from the lands of the plaintiffs, but also from tracts to which they had no exclusive right of possession. As a result of one of these occurrences two of the employees of plaintiffs were convicted in a justice of the peace court of tormenting and harassing the cattle. In addition, as disclosing animus, there also was evidence, that to injure defendants, plaintiffs threatened to release a thousand head of Texas steers on the range, and that if it became necessary to get defendants' cattle "off that range" they would employ ten men and spend $40,000 to accomplish that result. The making of these threats and the violent driving of the cattle were denied by plaintiffs' witnesses, but by the verdict returned it is evident that the jury accepted defendants' version of the various transactions. Where, as here, there is evidence of the elements which would entitle a party to recover exemplary damages, the allowance or denial thereof rests in the discretion of the jury. *Schlessman v. Brainard,* 104 Colo. 514, 92 P. (2d) 749, and cases there cited. Under such circumstances an appellate court, regardless of its views on the weight of the evidence, must consider the issue as having been conclusively resolved by the jury in favor of the successful

party and uphold the verdict. *Schreiber v. Burton,* 81 Colo. 370, 256 Pac. 1. In view of the evidence we decline to hold that the amount awarded defendants as exemplary damages was excessive or unreasonable.

The judgment is affirmed.

MR. JUSTICE FRANCIS E. BOUCK and MR. JUSTICE YOUNG concur.