DUNBAR, Respondent, v. EMIGH, Appellant

No. 8534

Submitted April 2, 1945. Decided April 30, 1945.

158 Pac. (2d) 311

Mr. M. J. Doepker of Butte, and Mr. Joseph P. Hennessey, of Billings, for Appellant.

Mr. E. F. Bunker, of Bozeman, and Mr. Philip C. Duncan, of Whitehall, for Respondents.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiffs, as owners or entitled to possession as lessees of lands described in the complaint, brought this action to restrain the defendant from interfering with fences and gates enclosing the premises and from continuing to be a nuisance to the plaintiffs and to recover damages. The complaint alleges in substance that defendant has opened gates and has cut, torn down and destroyed fences enclosing the premises described in the com-

plaint and allowed his mules and horses to graze upon lands owned by or in possession of the plaintiffs.

Upon the filing of the complaint the court issued an order[a] to show cause why a temporary restraining order should not be issued. The matter was brought on for hearing. Evidence was submitted by all parties. We shall not undertake to review the evidence here. It is sufficient to say that on most points it was conflicting. The land of the plaintiffs consists of a great many sections. Defendant, on the other hand owned one tract consisting of about three sections which was entirely surrounded by lands of the plaintiffs. Defendant also had another section adjoining the land of plaintiffs on the southwest. It was shown that defendant uses his land for the grazing of horses and mules.

After hearing the evidence the court granted a restraining order ordering defendant, his servants and agents, until the further order of the court to "absolutely desist and refrain from interfering with the fences, gates, and enclosures of the plaintiffs and any of them, and from trespassing, entering, driving over, by yourself or the trespassing of your livestock upon the property of the plaintiffs and each or any of them."

Thereafter defendant filed a motion to dissolve the injunction in the following respects: (1) That the injunction be dissolved "as to any livestock of defendant lawfully running at large or turned loose upon the public range or highways which wander, following their own inclinations, upon any property of the plaintiffs not enclosed with legal fence as defined by Sec. 3374, Revised Codes 1935, and which do not enter plaintiffs' property by being driven thereon by defendant. (2) That the injunction be dissolved "as to any livestock of defendant under fifty head thereof lawfully pastured by defendant in sections 20, 21 and 27 of Township 3 North Range 1 West, Montana Principal Meridian [being lands owned by defendant] which wander, following their own inclinations, upon any property of the plaintiffs not enclosed with legal fence, as defined by Sec. 3374, Revised Codes of Montana, 1935, and which do not enter plaintiffs' property by being driven thereon by

defendant, or through defendant's negligence." (3) "That said injunction be dissolved, as to any livestock of defendant, under fifty head thereof, lawfully pastured by defendant in section 1, Township 2 North, Range 2 West, Montana Principal Meridian [being land owned by defendant] which wander, following their own inclinations upon any property of the plaintiffs not enclosed with legal fence as defined by Sec. 3374, Revised Codes of Montana, 1935, and which do not enter plaintiff's property by being driven thereon by defendant or through defendant's negligence." (4) "That said injunction be dissolved, as to any livestock of defendant lawfully pastured or kept by defendant on lands owned or leased by him, which enter plaintiffs' property because of fences being torn down by plaintiffs' sheep or livestock, which are not driven upon plaintiffs' lands or which do not enter because of defendant's negligence."

The court modified the restraining order by ordering that the defendant, his agents and servants, "desist and refrain from interfering with the fences, gates and enclosures of plaintiffs and or any of them, and from trespassing, entering upon or driving over, except for the sole and only purpose of removing, with the exercise of reasonable care so as to prevent injury to the lands and property of plaintiffs or any of them, livestock belonging to him which have gone upon the lands of plaintiffs or any of them in spite of or notwithstanding reasonable care utilized by defendant to prevent the same from trespassing upon the lands of plaintiffs or any of them. It being expressly provided that until the further order of the court defendant may not place any livestock upon the lands of plaintiffs or any of them wilfully, and may not place livestock upon coterminous lands to those of plaintiffs or any of them which are privately owned by persons other than the plaintiffs or any of them and permit them to remain upon said lands without using due and reasonable care to see that the livestock so placed shall not stray or enter upon lands belonging to plaintiffs or any of them." The court expressly denied defendant's

motion to dissolve. The appeal is from the order denying the motion to dissolve.

The record presents for our determination the sole question of the effect of our fence law on plaintiffs' right to enjoin defendant from allowing livestock to trespass upon their lands. From the facts above recited it will be noted that the case has not yet been decided on its merits, but defendant contends that the court's order in effect denies him the right to use his own land for grazing purposes unless he herds his animals or fences them in, and he contends that he is not obliged to do either. Sec. 3374, Revised Codes, defines a legal fence, and Sec. 3378 makes the owner of domestic animals liable for all damages caused to the occupant of property enclosed by a legal fence.

As early as 1874 this court, in Smith v. Williams, 2 Mont. 195, held that "a lawful fence entirely surrounding the ground entered, or some obstruction equivalent thereto, is a condition precedent to the right to bring the action, and hence the instruction to the jury authorizing a recovery in the absence of an enclosure, and, in the absence of a lawful fence, was error."

In the case of Hill v. Chappel Bros., 93 Mont. 92, 18 Pac. (2d) 1106, 1109, we said: "Fence laws do not furnish immunity to one who, in disregard of property rights, turns loose his cattle under circumstances showing that they were intended to graze upon the land of another."

We think the rule applicable to facts such as we have here was well stated by the supreme court of Colorado in Bolten v. Gates, 105 Colo. 571, 100 Pac. (2d) 145, 146, where the court said:

"It is established that one who turns his cattle out to graze, unrestrained, upon lands where he has a right to so release them, is under no obligation to prevent them entering upon the unenclosed premises of another and if they do so enter through following their natural instincts, he is not responsible for the damage occasioned thereby. (Citing cases.) On the other hand, it is equally well settled that the absence of a lawful fence does not justify a willful trespass. (Citing cases.)

292

"In this connection it is further to be observed that under the fence statute an owner of livestock, turning the same at large upon land where he has a right so to do, is not liable in damages for their invasion of the private lands of another who fails to maintain a lawful fence, even though the former expects and intends that such trespass will be committed. (Citing cases.) While such expectation or intention may be a circumstance worthy of consideration in cases of alleged willful trespass, that alone will not constitute a sufficient basis for recovery in the absence of overt acts. This subject is well discussed in Martin v. Platte Valley Sheep Co., 12 Wyo. 432, 76 Pac. 571, 78 Pac. 1093."

The supreme court of Arizona stated the rule in the case of Garcia v. Sumrall, 58 Ariz. 526, 121 Pac. (2d) 640, 645, as follows:

"We think the rule laid down by the Colorado and Wyoming cases is more consonant with the situation prevailing in the grazing states and with our statutes above referred to, and we hold, therefore, that the mere knowledge or expectation by one who turns cattle loose in a place where he has a right to release them that they may or probably will wander upon the lands of another, or that he overstocks his own land so that the same effect may be produced, is not alone sufficient to constitute willful trespass. There must be some overt and unlawful act on the part of a defendant which tends to increase the natural propensity of cattle to wander and to direct them upon the premises of another."

We subscribe to the above rule, excepting that we have held ▆▆ overstocking is sufficient to constitute willful trespass (Hill v. Chappel Bros., supra; and see Lazarus v. Phelps, 152 U. S. 81, 14 S. Ct. 477, 38 L. Ed. 363), but there is no evidence of overstocking in this case and the evidence supports the conclusion that the number of animals mentioned in the motion to dissolve would not overstock the premises of defendant. There is of course willful trespass when it is accomplished by driving the animals upon the property as in Light v. United

States, 220 U. S. 523, 31 S. Ct. 485, 55 L. Ed. 570; Herrin v. Sieben, 46 Mont. 226, 127 Pac. 323, and other cases. The duty of the owner of livestock was summed up in Schreiner v. Deep Creek Stock Ass'n., 68 Mont. 104, 217 Pac. 663, 666, as follows: " 'The defendants were under no duty to herd, or keep in herd, or under herd, their cattle or any of them. In Montana and in other states, where, as here, the land owners must, by lawful inclosure, "fence out" the livestock of others, it is too plain for argument that the cattle owner may at his own pleasure either keep his cattle on his own land or turn them out with freedom to range and roam wheresoever they may desire. He is liable for such trespass only as they commit on property within a lawful fence, unless he drive them thereon, or (what is the legal equivalent) so treats them as to impel them to trespass.' "

Plaintiffs rely upon the case of Dorman v. Erie, 63 Mont. 579, 208 Pac. 908, 910, because of the similarity of the facts there involved to the facts of this case. There defendant owned a thirty-foot strip of ground, one-half mile long, situated within plaintiffs' enclosure. The court held that when defendant turned his cattle into the thirty-foot strip of ground, because of the smallness of the area it was his intention that they should graze on plaintiffs' land. It was also shown in that case that there was water on plaintiffs' land but none on the thirty-foot strip. The court's conclusion in that case was as follows: "It is clear that the movements of the stock in question were directed or controlled by the defendant, who knew, or was chargeable with knowledge of, the boundaries of adjacent private property, and where his stock invaded such property through either his willful act or negligence, the existence of a partition fence or a legal fence is not material."

The motion to dissolve still made defendant liable if there were willful acts or negligence on his part in causing the livestock to enter plaintiff's lands and came within the rule of that case as stated in the above quoted conclusion. It is true that the court also made this statement in the Dorman case: "When

a coterminous land owner, situate as was the defendant, turns his stock into his own inclosure without building a fence between his own land and that of the other owner, he must be held to the common-law obligation of keeping his livestock upon his own premises, and is liable for any damage resulting from their trespassing upon the inclosure of his neighbor.'' That statement must be limited to a set of facts such as was then before the court. It does not apply to facts such as we have here. Plaintiffs also rely upon the case of Long v. Davis, 68 Mont. 85, 217 Pac. 667. That case was taken from the jury on a directed verdict. The court simply held that it should have gone to the jury. There was evidence in that case that defendant drove his cattle from his own to plaintiff's land and defendant admitted that he had removed the fence dividing the property. Obviously plaintiff was entitled under those circumstances to have the question of his right to recover damages from defendant submitted to a jury. That is far from saying, however, that defendant should have been restrained from turning his cattle onto his own property in the future even though they might, without negligence on defendant's part, wander on plaintiff's property.

Herness v. McCann, 90 Mont. 95, 300 Pac. 257, was also one in which the animals were willfully driven to the lands of plaintiff, and it was properly held that he was entitled to recover damages.

In the instant case there is proof that defendant cut fences ██ and drove his cattle from his own to plaintiffs' land, but that goes to the question of plaintiffs' right to damages and does not entitle plaintiffs to a restraining order having the effect of making defendant fence his livestock in. The court erred in denying the motion of the defendant to have the restraining order dissolved as to livestock which merely wander upon property of the plaintiffs not enclosed with a legal fence and which are not driven thereon, and which do not enter plaintiffs' land because of defendant's negligence.

The cause is remanded with directions that the court sustain

the motion of defendant to dissolve the restraining order in the respects stated in the motion.

Mr. Chief Justice Johnson and Associate Justices Adair and Cheadle concur.