Robert WEGNER, Plaintiff-Appellee,

v.

The RODEO COWBOYS ASSOCIATION, INC., a Colorado Corporation, and George Williams, Defendants-Appellants.

No. 201–68.

United States Court of Appeals
Tenth Circuit.

Oct. 31, 1969.

Rehearing Denied Dec. 19, 1969.

William F. Dwyer, Denver, Colo. (F. E. Dickerson, Denver, Colo., on the brief), for appellants.

Daniel S. Hoffman, of Kripke, Hoffman, Carrigan & Dufty, P.C., Denver, Colo., for appellee.

Before FAHY, Senior Circuit Judge*, and SETH and HOLLOWAY, Circuit Judges.

SETH, Circuit Judge.

Plaintiff-appellee, Mr. Robert Wegner, brought suit against the defendant-appellant, The Rodeo Cowboys Association, Inc., for libel. The complaint alleges that the Association maliciously and falsely published in its semi-monthly paper, "Rodeo Sports News," that the appellee had been suspended as a member of the Association. The jury returned a verdict of $5,000 actual damages and $20,000 exemplary damages. Final judgment was entered on the verdict, and this appeal was then taken by the defendant Association.

The Rodeo Cowboys Association, Inc., is an organization with a large membership of professional cowboys who partic-

* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

ipate in rodeos throughout the country. The Association does not sponsor nor produce rodeos, but approves or sanctions certain rodeos and thereby permits its membership to participate therein. Those rodeos which are not so sanctioned are not open to the membership.

The plaintiff-appellee was a member of the Association beginning in 1953, and was at one time the National Bull Riding Champion. He announced his retirement from riding in December 1966 at the National Finals Rodeo in Oklahoma City. While an Association member the plaintiff became interested in the idea of rodeo competition by teams of cowboys representing different areas or cities rather than the existing competition by individuals. This plan was in conflict with the policies of the Association, and some differences thereby arose.

The record discloses that Mr. Wegner discussed the idea of team competition at the Association's general membership meeting in 1965, and with the Board of Directors of the Association at their meeting later that year. He was informed by the Board that they thought the idea he advanced was detrimental to the best interests of the sport of rodeo. At a meeting in March 1966, the Board again advised Mr. Wegner of their attitude towards his proposal of team competition. Following the Board's discussion at this meeting, a letter was sent to Mr. Wegner whereby he was instructed to post a $500 bond with the Association as forfeiture and to cease promoting the concept of team rodeo competition among the Association's membership. Mr. Wegner posted the bond.

As indicated above, in December 1966 Mr. Wegner orally announced his retirement from active rodeo competition. On January 4, 1967, Mr. Wegner sent a letter to the Association as a formal announcement of his resignation from the Association and requested the return of the $500 bond he had posted. Apparently there were some telephone conversations with Association officials relating to his resignation. The fact of the plaintiff's resignation had appeared in the minutes of the Association, but thereafter in the latter part of January at the Association Board meeting it was nevertheless decided to suspend the plaintiff's membership. The Board also decided he had violated the terms of his bond and refused to return the money. A letter was sent to plaintiff on January 23, 1967, notifying him of his suspension.

On February 1, 1967, there was published in the Association's newspaper, "Rodeo Sports News," under the caption, "R.C.A. Suspends Former Champion," an article about Mr. Wegner's suspension and forfeiture of the bond. The article stated he had been suspended for "actions and speech detrimental to the best interests of R.C.A." Thereafter and until the time of trial, a period of approximately eighteen months, Mr. Wegner's name appeared in the list of those suspended from the Association in each semimonthly issue of "Rodeo Sports News" without a statement as to the cause of suspension. The Association's rules state the authorized grounds for suspension. Some grounds are for serious offenses.[1] The record shows that the publication had a circulation of some

---

1. The Association rules circulated among the membership provide as to suspension the following:

"7. Any member will be fined, suspended or both from the Association for any of the following offenses:

"a. Bad checks as specified.

"b. Failure to pay hotel bills.

"c. Non-payment of entrance fees.

"d. Fighting in the arena.

"e. Quarreling in the arena.

"f. Attempting to fix, threaten, bribe, influence or harass the judges at any

time between the opening and closing dates of a rodeo, in or out of the arena, or for talking with a judge or timer while an event is in progress. Violators of this rule shall be reported to the Association board by the judge or judges involved, or by the arena director or stock contractor of the rodeo where the violation occurred.

"g. Attempting to fix, threaten, bribe, influence, or harass a director, spokesman, or official of the Rodeo Cowboys Association at any time.

20,000 copies. There also appeared an editorial in the publication on May 1, 1967, referring to the plaintiff's efforts to sign contracts with cowboys for team competition, and the stand of the Association against it.

As a result of these publications the plaintiff filed this action for defamation.

The record shows that plaintiff was promoting an association to organize team competition and was soliciting memberships. He had organized a corporation for this purpose, had secured stockholders, and had entered into contracts with prospective team contestants. The record shows that he was thus engaged in the rodeo business at the time. He was also employed in work unrelated to the rodeo business. The editorial complained of refers to plaintiff's continued involvement in the rodeo business.

■ The defendant-appellant raises as its first point on appeal that the trial court was in error in not granting its motion for a directed verdict. The record shows that defendant moved for a directed verdict at the close of the plaintiff's case and the motion was denied with leave to renew it. The defendant then put on its evidence which was rather extensive. When both sides had rested the attorney stated to the court: "We have a motion in addition, if Your Honor please; a renewal of it." The court responded: "We will take that up in the absence of the jury." The record does not contain anything further with reference to such a motion which apparently was the motion in question. The matter was not thereafter raised and the court was not requested to rule and did not do so. Under these circumstances, it must be held that it cannot here be raised. Fleming v. Lawson, 240 F.2d 119 (10th Cir. 1956); 5 Moore, Federal Practice 2341. In Brown v. Poland, 325 F.2d

984 (10th Cir. 1963), the defendant made a motion for directed verdict and the court took it under advisement, but did not thereafter rule on it. We there held that the appeal based on the point would have to be dismissed.

■ Defendant-appellant urges that the compensatory damages in the amount of $5,000 awarded by the jury were excessive, and contends that the trial court should have limited recovery to special damages. The appellant agrees that the trial court had the duty to determine whether the libel was libel per se or per quod, and that it did so. It also concedes that the libel here was per quod as the court determined, but urges that under these rulings the plaintiff had to show special damages and none were shown.

There were no special damages shown by the plaintiff. The trial court submitted the case to the jury on general damages on the ground that under Colorado law there was an exception to the general rule relating to libel per quod to permit submission without the showing of special damages when the imputation affects plaintiff's trade, profession, or office. Appellant urges that this is not the applicable rule, and further the damages awarded under the proof are excessive. We recently decided a defamation case raising an issue of damages but this issue was not presented or considered. M. F. Patterson Dental Supply Co. v. Wadley, 401 F.2d 167 (10th Cir. 1968).

The trial court in its application of Colorado law apparently relied to a large extent on the case of Bernstein v. Dun & Bradstreet, Inc., 149 Colo. 150, 368 P.2d 780, to support the exception to the general rule. As indicated by the trial court, the Colorado cases of Morley v. Post Printing & Publishing Co., 84 Colo.

"h. Any member sending in a fraudulent claim on the R.C.A. Group Insurance shall be fined and suspended by the Board. Claims are legitimate only if injury is incurred during the dates of the rodeo and inside the rodeo enclosure.

"i. Conduct or speech of any kind detrimental to the best interests of the Rodeo Cowboys Association or the sport of rodeo.

"j. Failure to abide by or disobedience of articles, by-laws, and rules of this Association."

41, 268 P. 540, Brown v. Barnes, 133 Colo. 411, 296 P.2d 739, and Knapp v. Post Printing & Publishing Co., 111 Colo. 492, 144 P.2d 981, expressed the general rule that special damages must be shown if the libel is per quod. See also Restatement of the Law of Torts, § 569.

The Colorado court in Bernstein v. Dun & Bradstreet, Inc., supra, expressed the same rule finding there that the defamation, if anything, was per quod. The Colorado Supreme Court there quotes in the opinion from Dean Prosser's article in 46 Va.L.Rev. 838 on "Libel Per Quod," as the rule accepted by the majority of courts. This "rule" is to the effect that defamation may be actionable when it falls " * * * into one of the four exceptional slander categories, of the imputation of crime, loathsome disease, defamation affecting business, or unchastity on the part of a woman." The Colorado court in Bernstein then states that this rule cannot be read from the previous case of Knapp v. Post Printing & Publishing Co. because it was not there necessary for the decision, nor was it in the case then before it, but the court did "not disagree" with it. Later in the opinion the court said the statements " * * * were neither libelous per se nor defamatory of plaintiff's business or professional reputation," thus allegations of special damages were required. The court's stated alternative of libel per se or damage to business reputation is a clear statement of the Colorado law on the subject by way of dictum. See also Restatement of the Law of Torts, §§ 569 and 573, together with the comments thereon. We hold that there is a sufficient indication in the Colorado cases to support the application in this case of such an exception to the special damage requirement.

■ The appellant also contends that the jury's verdict assessing exemplary damages in the amount of $20,000 was against the weight of the evidence and is excessive and unreasonable as not bearing a reasonable relation to the compensatory award of $5,000.

The record shows that the trial court correctly instructed the jury on the issue of malice and it was properly submitted. The jury was instructed that it must find malice before the plaintiff could prevail over a defense of privilege. The jury thus determined there was actual malice in the publication or by the repeated publications.

The trial court in considering the motion for a new trial fully considered the size of the exemplary damage award and concluded under Colorado law there was no definite rule as to the ratio of the amount of exemplary damages to the compensatory damages. It noted that the Colorado court had not considered the matter in defamation cases, but concluded that the Colorado courts have held generally that there must be some relationship between the two types of damages.[2] The exemplary and actual damage relationship in defamation cases is not comparable to that present in most tort cases as the trial court pointed out. The actual damages in libel actions are so dependent upon factors peculiar to the plaintiff's situation in the community, and are thus unlike physical damages although they are presumably compensatory also. This aspect of the damages evaluation together with the malice and the punitive aspects of exemplary damages which often are more obvious in defamation cases thus lead to a somewhat different consideration of the exemplary-compensatory ratio in such cases. We see no Colorado decision on this issue as presented in defamation cases, and find

2. The principal Colorado cases include Kresse v. Bennett, 151 Colo. 549, 379 P.2d 807; Barnes v. Lehman, 118 Colo. 161, 193 P.2d 273; Bolten v. Gates, 105 Colo. 571, 100 P.2d 145; Starkey v. Dameron, 96 Colo. 459, 45 P.2d 172; Kendall v. Lively, 94 Colo. 483, 31 P.2d 343. See also, "Exemplary Damages in the Law of Torts," 70 Harv.L.Rev. 517. Note 70 Yale L.J. 1296; Morris, "Punitive Damages in Tort Cases," 44 Harv. L.Rev. 1173.

the trial court's ruling on the law of Colorado on this point to be within our decisions in Douglas-Guardian Warehouse Corp. v. Jones, 405 F.2d 427 (10th Cir. 1969); Industrial Indemnity Co. v. Continental Casualty Co., 375 F.2d 183 (10th Cir. 1967), and Bledsoe v. United States, 349 F.2d 605 (10th Cir. 1965), holding that in the absence of state decisions, we will follow the trial court's determination of such law unless it is clearly wrong. Our consideration of damages in Dearmore v. Gold, 400 F.2d 887 (10th Cir. 1968), with the granting of a new trial by reason of excessive exemplary damages, concerned injuries sustained in an automobile accident, and thus is not entirely comparable for the reasons stated above.

■ Lastly, the appellant argues that the trial court committed reversible error in denying its motion for production of certain documents in the appellee's possession and in not permitting the appellant to interrogate the appellee concerning these documents at trial. These documents were contracts entered into between the appellee and some fifty members of the Association who apparently agreed to participate in team rodeos. The appellee resisted the appellant's discovery motion on the basis that the documents contained trade secrets and if he revealed the names of those signing up, they too would be in jeopardy of being suspended from the Association. There exists wide discretion with the trial court in allowing or refusing discovery, Paramount Film Distributing Corp. v. Civic Center Theatre, 333 F.2d 358 (10th Cir. 1964); United States v. Meyer, 398 F.2d 66 (9th Cir. 1968); Cities Service Oil Co. v. Celanese Corp., 10 F.R.D. 458 (D.Del.1950). In reviewing the record it is clear that the trial court was well within the bounds of its discretion in denying the appellant discovery in the above instance.

Affirmed.